MICHAEL M. KONAN & another[1] *vs.* BETTY S. CARROLL
& another.[2]

No. 92-P-1862.

Worcester. January 18, 1994. - August 26, 1994.

Present: ARMSTRONG, BROWN, LAURENCE, JJ.

*Practice, Civil,* Service of process, Default, Vacation of judgment. *Judgment,* Default.

In a civil action the judge erred in denying the defendants' motion to vacate a default judgment, where the record did not establish that the defendants had ever been properly served with notice of the case. [228-230]

CIVIL ACTION commenced in the Superior Court Department on September 10, 1985.

A motion to vacate judgment, supersede execution, and quash service of process was heard by *Charles M. Grabau,* J.

*William J. Dailey, Jr.,* for the defendants.
*David I. Shorr* for the plaintiffs.

BROWN, J. This is an appeal from an order denying the defendants' motion to vacate default judgment, supersede execution, and quash service of process. Essentially, this case concerns the sufficiency of notice to the defendants of a suit arising out of an automobile accident that occured in 1982. The procedural background is a long and torturous one in which the action dies and, like Banquo's ghost, is repeatedly resurrected. But the case reduces itself simply to those two basic perennial questions: What did the defendants know, and when did they know it?

The plaintiffs, Michael Konan and Maureen Daigle, claim that on September 11, 1982, an automobile owned by de-

---

[1]Maureen Daigle.
[2]James E. Carroll.

fendant James E. Carroll and operated by defendant Betty S. Carroll struck and injured Konan, who was operating a motorcycle owned by Daigle.[3] Nearly three years later, on September 10, 1985, the plaintiffs filed an action against the Carrolls. According to the record, service on the Carrolls was not perfected until January 13, 1987, when a copy of the summons and complaint was left at the "last and usual place of abode" of the defendants at 43 Fruit Street, Milford.[4] See Mass.R.Civ.P. 4(d)(1), 365 Mass. 734 (1974).

We lay out so much of the procedural trail as is necessary to get the full flavor of the myriad of missteps. On November 5, 1986, a notice to appear for a special call of the docket on December 9, 1986, was sent to the plaintiffs' attorney (but not the defendants, who had yet to be served). On December 9, an order entered for judgment of dismissal unless service was perfected within 30 days. The plaintiffs failed to comply with the order, and on January 14, 1987, a judgment of dismissal without prejudice was entered. The judgment of dismissal was vacated on February 26, 1987, on a motion by the plaintiffs, claiming that service was perfected on January 13, 1987.[5]

Following a hearing at another special call of the docket on June 24, 1987, notice of which was mailed to the plaintiffs' attorney on June 5, 1987 (again, however, no notice was given the defendants), an order was entered stating that judgment of dismissal was to enter unless the defendants are

---

[3]We mention at this juncture a point of more than slight interest. The Carrolls' automobile suffered approximately $1,200 in damage. They submitted a property damage claim to Konan's insurance carrier, Liberty Mutual Insurance Company, which paid approximately $900 to the Carrolls.

[4]At the time of the accident, September 11, 1982, the Carrolls did reside at 43 Fruit Street in Milford. Later that same month, they moved from Milford to 1 Pleasant Street in Upton. In November, 1983, they moved from Upton to 287 Franklin Street in Douglas. In August, 1985, the Carrolls moved from Douglas to 23 Cross Street in Northbridge, and were residing there when the action was filed. The Carrolls moved from Northbridge to Maine in August, 1986, and have resided there ever since.

[5]The Carrolls received no notice of the February 26 order, a particularly curious circumstance, given that the plaintiffs' attorney had represented that he had perfected service on the Carrolls on January 13, 1987.

"defaulted and a motion for assessment of damages and for default judgment filed and heard within thirty days." A copy of that order was mailed to the plaintiffs' attorney; no notice was provided to the Carrolls. On July 23, the plaintiffs' attorney filed a "Request for Default." Again, no notice to the Carrolls. The defendants were defaulted on July 28, 1987. Copies of the default were mailed by the court to the plaintiffs' attorney and the Carrolls. On August 11, 1987, the Carrolls' notice of default was returned by the post office with the notation "addressee unknown."

The docket reflects no further action in the case until March 28, 1989, when the court ordered the complaint dismissed without prejudice (for the *second* time) for failure to obtain assessment of damages within thirty days of the June 24, 1987, order. Although a copy of that order was mailed to the plaintiffs' attorney, the Carrolls were not notified. A year later, on March 22, 1990, the plaintiffs filed a motion to vacate the March 28, 1989, judgment of dismissal, and a motion for default judgment and assessment of damages. Both motions were allowed by the court on May 22, 1990. The defendants were not notified of either of the plaintiffs' motions or the court's order vacating the dismissal.[6] The notice of judgment by default upon assessment of damages was sent by the court to both the plaintiffs and the defendants. The notice to the Carrolls was returned to the court by the post office with the notation "forwarding address expired."[7]

Meanwhile, in the midst of this latest "march-in-place," on May 7, 1990, the plaintiffs' attorney mailed a certified letter to the defendants' automobile liability carrier, Firemen's Fund Insurance Companies, in an effort to comply

---

[6]The plaintiffs' attorney's military affidavit indicated that the defendants were "at present" located at the Northbridge address. The defendants had not been at that address since August, 1986, a gap of almost four years. See note 4, *supra*.

[7]A post office forwards mail to customers who file change of address forms for one year, and for six months beyond that a post office returns the mail to the sender with the correct forwarding address. After eighteen months, the mail is returned to sender endorsed in some manner to indicate that the forwarding order has expired. United States Postal Service, Domestic Mail Manual (Transition Book) §§ 159.2 et seq. (1994).

with G. L. c. 231, § 58A. The letter advised the insurer of the pendency of the assessment of damages hearing but failed to provide the date of the hearing.[8]

After several exchanges of correspondence between the defendants' insurer and the plaintiffs' new counsel (retained in April, 1991), on August 31, 1991, an execution was issued by the trial court pursuant to a motion by the plaintiffs. On July 1, 1992, the defendants filed a motion to vacate judgment, supersede execution, and quash service of process, which was denied by the court on October 5, 1992. The defendants filed a motion for reconsideration, which also was denied. The Carrolls now appeal from the denial of their motion.

The Carrolls argue that they were never properly served with notice of the suit, and therefore the default judgment and ensuing assessment of damages are void as matter of law.[9] They maintain that the service of process at 43 Fruit Street, Milford, on January 13, 1987, was clearly improper due to the fact that the Carrolls had not lived at that address since September, 1982. See note 4, *supra*.

In support of their motion to vacate, the Carrolls filed affidavits setting out the chronology of their residences from 1982 to the present, and denying knowledge of the suit prior to the entry of default judgment in May, 1990.[10] The plain-

---

[8]Deciding as we do that the Superior Court judge abused his discretion, we have no occasion to decide whether the letter mailed to the defendants' insurer in order to comply with G. L. c. 231, § 58A, satisfied the service of process requirements of Mass.R.Civ.P. 4, 365 Mass. 733 (1974).

[9]As far as can be gleaned from the record, the only notice ever received by the Carrolls regarding the plaintiffs' claim was a June 16, 1983, letter mailed by the plaintiffs' counsel, Albert Grudzinskas, and addressed to Betty S. Carroll at the Fruit Street address. The Carrolls' insurance carrier, Fireman's Fund, subsequently sent an acknowledgment letter to Attorney Grudzinskas on July 12, 1983, seeking cooperation in investigating the circumstances of the accident. Fireman's Fund sent a *second* letter to Attorney Grudzinskas on January 17, 1984, requesting documentation concerning the plaintiffs' damages and injuries. The record does not reflect that Attorney Grudzinskas responded to this request or the prior one.

[10]Conspicuously, *nowhere* in the record is it clear when the defendants had actual notice of the suit. As best we can determine from the Carrolls' affidavits, they had actual notice sometime between May 22, 1990, and

tiffs, for their part, maintain that the default judgment is not void because service of process was perfected at the "last and usual place of abode" of the defendants. The plaintiffs filed an opposing affidavit to that effect from the deputy sheriff who had served process.[11]

This case is controlled in material respects by the reasoning of *Farley* v. *Sprague*, 374 Mass. 419 (1978). In *Farley*, the defendant was defaulted for failure to appear and answer, and final judgment entered for the plaintiff, whereupon execution issued. The defendant moved to vacate for lack of proper service and filed affidavits stating that he had not been a resident of Massachusetts for over forty years. The Supreme Judicial Court concluded that the plaintiff (who submitted only the return of service) had failed to controvert the defendant's allegations in his affidavit, and reversed the order denying relief from the judgment.

Similarly, we find that the trial judge abused his discretion in not allowing the defendants' motion to vacate. The text of the deputy sheriff's affidavit does not state with any specificity what investigation he made to verify that the Carrolls were then living at the Front Street address. See note 11, *supra*. Rather, it is wholly unresponsive, merely stating in a perfunctory fashion the "procedure" to be followed in order to effect service of process. In essence, it does not controvert the defendants' affidavits. Compare *Atlas Elevator Co.* v. *Stasinos*, 4 Mass. App. Ct. 285, 288 & n.2 (1976) (judge did not abuse discretion in denying motion to vacate on grounds that the defendant had not been served where judge found that the defendant was aware of litigation at an "early stage," the motion to vacate was "unseasonably late," and he

---

June, 1992. Nor does the record reflect that the defendants directed any inquiry or request for the Carroll's current address to their insurance carrier prior to filing this action or at any time thereafter. See note 9, *supra*.

[11]The deputy sheriff's affidavit states in relevant part: "It was *our procedure* on January 13, 1987 to verify that a Defendant was living at a particular address by either checking the names on the mailbox, speaking to neighbors or taking whatever other steps were necessary to verify that the Defendants in fact lived at the address given" (emphasis supplied).

had "failed 'to provide a convincing and detailed outline of his alleged defense' ").

In concluding as we do, we need not reach the issue of whether the defendants were properly notified, pursuant to Mass.R.Civ.P. 5(a), 387 Mass. 1221 (1983), & 5(b), 365 Mass. 745 (1974), of the pendency of various proceedings throughout this litigation. Suffice it to say that it would be untoward, given the lackadaisical manner in which this case has been handled throughout by the plaintiffs' attorney, to deny the defendants their day in court to contest liability as well as what is a significant assessment of damages.[12] Cf. *Dewing* v. *J.B. Driscoll Ins. Agency*, 30 Mass. App. Ct. 467, 472-473 (1991) (concern for reducing congestion in court dockets must not come at the expense of justice).

The order of October 5, 1992, is vacated and a new order is to enter vacating the default judgment. The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[12]The amount of the damages and interest awarded on the default judgment (July 28, 1987), at the time the execution issued on August 31, 1991, was in excess of $74,000 and climbing.