**UNITED STATES of America**

v.

**Michael A. CASCIANO, Defendant.**

**No. 95–CR–400.**

United States District Court,
N.D. New York.

May 20, 1996.

Thomas J. Maroney, United States Attorney, Northern District of New York, Syracuse, New York, for the U.S. (John Duncan, Assistant U.S. Attorney, of counsel).

Ronald J. Pelligra, Syracuse, New York, for Defendant.

### MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

The court now considers the post-trial motions of Michael A. Casciano. After a jury

trial in April of 1996 in Syracuse, New York, defendant was convicted of one count of crossing a state line with the intent to engage in conduct in violation of a protection order, as prohibited by 18 U.S.C. § 2262(a)(1). Defendant opted not to present written post-trial papers, but instead to rely on his oral motions made during trial and after the judgment. Letter from Ronald J. Pelligra, Esq., Apr. 19, 1996, Doc. 43. The following constitutes the court's Memorandum–Decision and Order.

## I. BACKGROUND

Viewing the evidence in the light most favorable to the government, *United States v. Cunningham*, 723 F.2d 217, 230 (2d Cir. 1983), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984), the rational trier of fact could have decided the prosecution proved the following facts beyond a reasonable doubt. Defendant dated the victim, Susan Keezer, for approximately two and one-half weeks in the spring of 1995. Both resided in the Boston area at the time. After the victim attempted to break off the relationship, defendant engaged in a pattern of harassing behavior, viz., appearing uninvited at the victim's workplace and residence, making repeated threatening phone calls, and rifling through the victim's mail and personal belongings.

Pursuant to chapter 209A of the General Laws of the Commonwealth of Massachusetts, the victim obtained an abuse prevention order, also referred to as a protection order, from the District Court for Lowell, Massachusetts on April 25, 1995. April Order, Gov.Ex. 9. The protection order, and subsequent orders obtained by the victim against defendant, contains inter alia the following substantive provisions:

1. YOU ARE ORDERED NOT TO ABUSE THE PLAINTIFF by harming or attempting to harm the plaintiff physically, or by placing the plaintiff in fear of imminent serious physical harm, or by using force, threat or duress to make the plaintiff engage in sexual relations unwillingly.

2. YOU ARE ORDERED NOT TO CONTACT THE PLAINTIFF ... either in person, by telephone, in writing, or otherwise, either directly or through someone else, and to stay at least 100 yards away from [her] unless your receive written permission from the Court to do otherwise.

3. YOU ARE ORDERED IMMEDIATELY TO LEAVE AND STAY AWAY FROM THE PLAINTIFF'S RESIDENCE....

....

5. YOU ARE ORDERED TO STAY AWAY FROM THE PLAINTIFF'S WORKPLACE....

....

9. YOU ARE ALSO ORDERED immediately to surrender to the Boston Police Department all guns, ammunition, gun licenses, and FID cards....

Abuse Prevention Orders, Gov.Ex. 1.

The order also requires defendant to turn over any keys belonging to the victim, and not to damage any of the victim's belongings. Defendant was personally served with this protection order on April 27, 1995. *See* Boston Police Abuse Prevention Order Log Book Entries, Gov.Ex. 11, at 4. The April order expired on May 10, 1995.

Defendant's harassing behavior continued, and on June 9, 1995, the victim obtained a second protection order, identical in its substantive provisions to the first, from the District Court for Cambridge, Massachusetts. June Order, Gov.Ex. 1. Boston Police attempted to serve the order upon defendant several times at his apartment. *See* Log Book Entries, Gov.Ex. 11, at 5–6. The June order having been issued ex parte, a hearing was set for June 23, 1995 in the Cambridge District Court. Defendant failed to appear, the order was continued to July 7, 1995, and another hearing was set for that date. Abuse Prevention Orders, Gov.Ex. 1, at 2. Further service was attempted between June 23 and July 7, but defendant was not home. Log Book Entries, Gov.Ex. 11, at 7. Boston Police Lt. James Kirvin testified that after three or more failed attempts at personal service officers left a copy of the order under the door of defendant's apartment, on June 26, 1995. *See* Abuse Prevention Orders, Gov.

Ex. 1, at 4; Log Book Entries, Gov.Ex. 11, at 7. Lt. Kirvin did not testify as to whether or not a copy was also mailed to that address.

Defendant failed to appear on the second hearing date, and the order was extended to June 10, 1996. Abuse Prevention Orders, Gov.Ex. 1, at 3 (same order in evidence as Gov.Ex. 13). It appears that service of this order was also attempted. Log Book Entries, Gov.Ex. 22. The jury had before it testimony from which it could readily conclude that defendant had actual notice of the protection orders. Moreover, the facts supported the conclusion that defendant did not misunderstand the import of the protection order, as he had previous experience with such orders and had in fact been imprisoned in Massachusetts for the violation of an order protecting another woman before these incidents occurred. *See* Abuse Prevention Orders, Gov.Ex. 10.

Defendant continued to harass the victim. It came to pass that the victim moved to Syracuse, New York in the fall of 1995 to enroll in a doctoral program at the State University of New York Health Science Center. In early September, defendant appeared in Syracuse and engaged in harassing behavior of a quality escalated from his prior conduct. He discovered the victim's unlisted telephone number and initiated dozens of calls, three of which were recorded on the victim's answering machine and were played for the jury. *See* Transcript of Telephone Messages, Gov.Ex. 3. He sent electronic mail messages to the victim's account. Gov. Exs. 7 & 8. Defendant approached the victim in the library at the Health Science Center, prompting a friend of the victim to run for help. Defendant appeared in a lecture hall where the victim was attending class, and then chased the victim after she fled, abandoning her only after she sought refuge in a professor's office and campus security was called. Defendant was finally apprehended—but even in custody he managed to make phone calls to the victim, until Magistrate Judge DiBianco suspended his phone privileges at the Onondaga County Justice Center.

Having summarized the relevant facts, the court will proceed to the merits of the post-trial motions.

## II. DISCUSSION

The standards for granting judgment non obstante veredicto pursuant to Criminal Procedure Rule 29 or a new trial under Rule 33 are well known to this court. Regarding Rule 29, the court has noted that "[i]t matters not whether a motion for judgment of acquittal is made before the jury's verdict or after; the available grounds and standard for granting or denying are the same." *United States v. Arena*, 918 F.Supp. 561, 565 (N.D.N.Y.1996); *accord United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979). The motion should be granted "if the evidence is insufficient to sustain a conviction," Fed.R.Crim.P. 29(a), or perhaps if there is a "hopeless variance" between the proof and the crime charged, 2 Charles Alan Wright, Federal Practice and Procedure: Criminal 2d § 466, at 654 (1982 & Supp. 1995). The trial judge in considering a motion under Rule 29

> must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter.

*Curley v. United States*, 160 F.2d 229, 232–33 (D.C.Cir.), *cert. denied*, 331 U.S. 837, 67 S.Ct. 1512, 91 L.Ed. 1850 (1947); *accord United States v. Rodriguez*, 706 F.2d 31, 41 (2d Cir.1983); *United States v. Lieberman*, 637 F.2d 95, 104–05 (2d Cir.1980); *United States v. Taylor*, 464 F.2d 240, 243 (2d Cir.1972); *United States v. Moustakis*, 864 F.Supp. 390, 391–92 (S.D.N.Y.1994).

58

As previously mentioned, the evidence should be evaluated in the light most favorable to the government, *United States v. Cunningham*, 723 F.2d 217, 230 (2d Cir.1983), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984), and the defendant carries a very heavy burden, *United States v. Chang An–Lo*, 851 F.2d 547, 553 (2d Cir.) (citations omitted), *cert. denied*, 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988).

██ Motions for new trials present different considerations. District judges retain broader discretion to order new trials than they do to throw out jury verdicts, but even "that discretion should be exercised sparingly." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir.1992), *cert. denied*, —— U.S. ——, 115 S.Ct. 1404, 131 L.Ed.2d 291 (1995). A district judge may order a new trial "if required in the interest of justice." Fed.R.Crim.P. 33. New trials are available upon several grounds, including inter alia newly discovered evidence, juror bias, prosecutorial misconduct, ineffective assistance of counsel, witness perjury, or simply that the verdict was against the great weight of the evidence. *See generally* 8A James Wm. Moore, Moore's Federal Practice ¶ 33.02[1] n. 2, 33.04–.06. Of course, the court is usually obliged to defer to the jury's resolution of the weight of the evidence and witness credibility. *Sanchez*, 969 F.2d at 1414 (quoting *United States v. LeRoy*, 687 F.2d 610, 616 (2d Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983)).

██ In this case, the prosecution was obligated to prove beyond a reasonable doubt that (1) defendant crossed a state line (2) with the intent to engage in conduct that (3) "violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury" to the victim, 18 U.S.C. § 2262(a)(1)(A)(i). From the court's summary recount of the facts above, it should be obvious that the government adduced sufficient evidence to prove beyond a reasonable doubt that defendant crossed the Massachusetts–New York border with the intent to commit acts violative of the protection order the victim acquired against him.

Defendant for instance appears to have repeatedly contacted the victim by telephone and electronic mail while in New York, and has come within 100 yards of the victim on at least two occasions after he crossed the state line from Massachusetts. These actions contradict the portions of the extant protection order, Gov.Ex. 13, that protect the victim from "repeated harassment" within the meaning of section 2262(a)(1)(A)(i). The conclusion is inescapable that the evidence at trial was not insufficient to carry the guilty verdict, and the verdict was not against the great weight of the evidence. No post-trial relief can therefore be had upon the reason that the evidence was legally insufficient to sustain the verdict, or that the incriminating evidence was so sparse that the interests of justice require that defendant be retried.

██ Beyond the pro forma argument of legal insufficiency, defendant objected to the court's refusal to charge the jury on a particular Massachusetts statute. New trials are available when the court has committed prejudicial error in its jury charge, even when the evidence was legally sufficient to support the verdict. *E.g., United States v. Vicaria*, 12 F.3d 195, 199 (11th Cir.1994). The exception defendant made following the court's jury charge relates to the Massachusetts requirements for service of abuse prevention orders.

██ At trial it was assumed that if the Massachusetts court failed to obtain personal jurisdiction over defendant by service of process, then the order was invalid and the federal prosecution, predicated as it was on the existence of a protection order, could not survive. That assumption was sound. The Due Process Clause requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The court believes that service by leaving, after repeated attempts by police officers at personal service, combined with defendant's actual notice, likely satisfies the requirements of Due Process in this case. However, since the instant offense

requires that there be a valid extant protection order, the court finds it inescapable that the protection order must not be invalid by reason of insufficiency of service of process under the commonwealth law of Massachusetts.

■ The court turns first to the Massachusetts abuse prevention statute itself to see what service is sufficient. The only portion of chapter 209A addressing service of abuse prevention orders provides that the court

> shall transmit two certified copies of each such order and one copy of the complaint and summons forthwith to the appropriate law enforcement agency which, unless otherwise ordered by the court, shall serve one copy of each order upon the defendant, together with a copy of the complaint, order and summons and notice of any suspension or surrender ordered pursuant to section three B of this chapter. The law enforcement agency shall promptly make its return of service to the court.

Mass.Gen.L. ch. 209A, § 7.

This section obviously does not discuss what sort of service is sufficient, but is only concerned with who shall serve process, how many copies, et cetera. The court therefore found it appropriate to read section 7 of chapter 209A in pari materia with the applicable Massachusetts rule of procedure governing service of process.

The next question is which set of procedural rules does the court refer to? Defendant initially contended that the Massachusetts Rules of Criminal Procedure apply. This was erroneous, as eventually acknowledged by the defense. Although violations of protection orders can be punished criminally, proceedings instituted under chapter 209A are civil in nature. Mass.Gen.L. ch. 209A, § 3A; *see also Frizado v. Frizado,* 420 Mass. 592, 651 N.E.2d 1206, 1210 n. 3 (1995). Con-

sequently, the court correctly declined to charge the jury on the rule governing service of criminal process in Massachusetts, which admittedly requires that if abode service is made, the process must be left with "some person of suitable age and discretion then residing" in defendant's dwelling, Mass. R.Crim.P. 6(c)(3), and not merely slid under the door as in the case at bar.

Because all relevant protection orders and extensions thereof in this case were issued by district courts of the Commonwealth of Massachusetts, the court concludes that the applicable procedural rules are the District and Municipal Courts Rules of Civil Procedure. *See* Mass.Dist. & Mun.Cts.R.Civ.P. 1.[1] Those rules provide that "[s]ervice shall be made as follows:"

> (1) Upon an individual by delivering a copy of the summons and of the complaint to him personally; or by leaving copies thereof at his last and usual place of abode; . . . .

Mass.Dist. & Mun.Cts.R.Civ.P. 4(d)(1).

■ The court instructed the jury generally along these lines. Since the applicable rule permits either personal service or simple abode service, without the necessity of leaving the process with "some person of suitable age and discretion", *cf.* Mass.R.Crim.P. 6(c)(3), the proof at trial was sufficient for the jury to find that defendant had been properly served with the June protection order. This would seem to settle the issue, if not for the existence of the following Massachusetts procedural statute:

> In an action brought in the district court, if service is made at the last and usual place of abode the officer making service shall forthwith mail first class a copy of the summons to such last and usual place of abode. The date of mailing and the address to which the summons was

---

1. Abuse prevention order proceedings in Massachusetts Family or Probate Courts would be governed by the Rules of Domestic Relations Procedure. Mass.R.Dom.Rel.P. 1. The service of process provision in the Domestic Relations rules differs significantly from the District/Municipal Court rules. *Compare* Mass.R.Dom. Rel.P. 4(d) *with* Mass.Dist. & Mun.Cts.R.Civ.P. 4(d).

Protection order proceedings brought in Superior Court are governed by the Massachusetts Rules of Civil Procedure. *See* Mass.R.Civ.P. 1. The provision prescribing the manner of service of process in the Rules of Civil Procedure is the same as the relevant District/Municipal Court rule. *Compare* Mass.R.Civ.P. 4(d) *with* Mass. Dist. & Mun.Cts.R.Civ.P. 4(d).

sent shall be set forth as required by section thirty-five in the officer's return.

Mass.Gen.L. ch. 223, § 31.

This statute apparently would not apply if the protection order was sought from the Municipal or Superior Courts, even though an identical rule governs service of process in those tribunals. As the Background section of this opinion relates, no testimony was heard whatsoever from the Boston Police lieutenant regarding mailing of the process. The Log Book copies, Gov.Exs. 11 & 22, do not reveal whether the process was mailed in addition to being left at defendant's last and usual place of abode. Neither does the copy of the police officer's return indicate whether a mailing was made. Gov.Ex. 1, at 5.

Defendant did not bring this statute to the attention of the court or request the court to instruct the jury upon it until the morning of April 11, 1996, the day of which both parties made their summations and the court gave its charge. Confronted at the eleventh hour with a statute whose applicability was unknown, the court declined to charge on it. The court now proceeds to examine whether or not prejudicial error resulted from this decision, keeping in mind that the government need only prove the existence of a valid protection order beyond a reasonable doubt in order to carry its burden with respect to this element of the crime described at 18 U.S.C. § 2262(a)(1).

■ Defendant's objection stems from the proposition that absent a followup first class mailing, abode service under the auspices of the commonwealth district courts is imperfect, and the order is necessarily invalid. However, Massachusetts cases reveal that imperfect service does not automatically invalidate a judicial order or decision in the context of a later proceeding when the defendant has had actual notice, and no prejudice has accrued. In *Atlas Elevator Co. v. Stasinos*, 4 Mass.App.Ct. 285, 345 N.E.2d 921 (1976), for instance, the Massachusetts Appeals Court refused postjudgment relief based on improper service of process. In so holding, the Appeals Court observed that the defendant was actually aware of the litigation at an early stage and chose not to appear for his own reasons. *Id.* at 922. In another

case, the Appeals Court reversed a lower court's dismissal of an appeal for improper service upon appellees. *City Council of Waltham v. Board of Appeals of Waltham*, 5 Mass.App.Ct. 773, 359 N.E.2d 651 (1977). The Appeals Court opined that "the proceedings should not have been dismissed without inquiry as to whether any of the defendants might have been prejudiced in some way" by the statutorily insufficient service. *Id.* at 652 (citation omitted). It appeared uncontested that the appellees had received actual notice of the appeal. *Id.*

The importance of actual notice and absence of prejudice resounds in other cases. For instance, in rejecting the contention that service prior to commencement of an action was a "nullity," the Massachusetts Appeals Court observed that under modern practice of that commonwealth a "[m]ore weighty" consideration was "that the defendant was in fact given notice and was not prejudiced by the prematurity" of the service. *Finkel v. Natale Rota, Inc.*, 19 Mass.App.Ct. 55, 471 N.E.2d 396, 398 (1984), *review denied*, 393 Mass. 1106, 474 N.E.2d 182 (1985). And in determining that an action should not be dismissed despite plaintiff's failure to serve process within the statutorily prescribed time period after filing, the Appeals Court advised that the undue interim between commencement and service "must constitute prejudice to the defendants, afford the plaintiffs an unfair tactical advantage, or involve harassment of the defendants" before the drastic remedy of dismissal will be granted. *School Comm. of Holyoke v. Duprey*, 8 Mass.App. Ct. 58, 391 N.E.2d 925, 926 (1979).

Similarly, when Massachusetts courts have granted relief based upon insufficient service, the fact that defendants never received actual notice weighed heavily on the decision. In *Konan v. Carroll*, 37 Mass.App.Ct. 225, 638 N.E.2d 936 (1994), for example, the Appeals Court granted a motion to vacate judgment when it appeared that the residence that service was left at was not defendant's last and usual place of abode. In so deciding, that court found it "conspicuous" that "nowhere in the record is it clear when the defendants had actual notice of the suit." *Id.* at 938 n. 10.

The jury in this case had before it evidence from which it could conclude beyond a reasonable doubt that defendant had actual notice of the extant order, and was not prejudiced by the substituted service performed—ergo the order was valid during the times charged in the indictment. In the context of a federal prosecution for the crossing of state lines with the intent to violate such order, this is sufficient.

### III. CONCLUSION

As the court is convinced that its charge was not prejudicially erroneous under the circumstances, defendant's motions for judgment of acquittal, or in the alternative, for a new trial are DENIED.

The court directs the United States Marshal to bring the defendant Michael Casciano to the United States Courthouse in Syracuse, New York on Friday, July 12, 1996 for sentencing. The United States Probation Office is ordered to prepare a presentence investigation report in accordance with 18 U.S.C. § 3552(a) and Fed.R.Crim.P. 32(c).

It is So Ordered.