# United States Court of Appeals
## For the First Circuit

Nos. 06-1626, 07-1258

BRANDON S. BLAIR et al.,

Plaintiffs, Appellants,

v.

CITY OF WORCESTER et al.,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Boudin, Chief Circuit Judge,
Campbell and Stahl, Senior Circuit Judges.

Michael L. Altman with whom Altman Riley Esher LLP was on brief for appellants.
Andrew J. Cambaccini with whom Reardon, Joyce & Akerson, P.C., and Janet J. McGuiggan, City of Worcester Law Department, were on brief for appellees.

April 8, 2008

**STAHL**, **Senior Circuit Judge**.    Plaintiffs-appellants

Brandon S. Blair and Richard N. Tousignant ("plaintiffs") appeal

the district court's dismissal of two separate actions in favor of

defendants City of Worcester, Massachusetts ("City"), former

Worcester Chief of Police James Gallagher, and Worcester Police

Officers Daniel Dowd, Thomas Dowd, Thomas C. Duffy, Falcone[1],

Edward McGinn, James Moore, Jose Ortiz, Jonathan Thomas, and Peter

Towler (collectively, "defendants").[2]    The plaintiffs, in separate

complaints that were later consolidated, alleged that they were

attacked and beaten by Worcester police officers, for which they

sought recovery against the defendants under myriad legal theories.

In an initial action, the district court granted the defendants'

motions to dismiss, without prejudice, for failure to perfect

service of process.    After the plaintiffs refiled their claims in

a second action, the district court granted the defendant officers'

motions to dismiss for failure to state a claim, holding that the

matter was time-barred.    We affirm in part, reverse in part, and

remand for further proceedings.

## I.  BACKGROUND

---

[1]The first name of Officer Falcone is unclear.

[2]We note that the City of Worcester, Chief Gallagher, and
Officer Thomas were not named in the second action.  Moreover, the
plaintiffs voluntarily dismissed Falcone from the second action on
August 29, 2006.    Finally, the plaintiffs have abandoned their
claims with respect to Chief Gallagher and the City.  Where these
distinctions matter, we refer to the remaining defendants as the
"defendant officers."

The record facts of this case, at least those relevant to the instant appeal, are not in material dispute. On December 22, 2001, the plaintiffs were involved in an altercation with several of the defendant officers. As a result of this incident, criminal charges were brought against the plaintiffs. At the conclusion of a jury trial, both plaintiffs were acquitted. Shortly thereafter, on August 16, 2002, the plaintiffs, represented by W. Theodore Harris, filed separate complaints[3] in federal district court, alleging various claims based on their purported mistreatment at the hands of the defendants. On September 5, 2002, Donald Rider, an attorney for the City, notified Chief Gallagher and Officers Daniel Dowd, Thomas Dowd, Duffy, Patricia Falcone,[4] McGinn, Moore, Ortiz, Thomas, and Towler that two civil rights lawsuits were pending against them in federal district court; indicated that he would handle the lawsuits; and requested that they inform him if served with process. The record does not reveal how Rider learned of the lawsuits, although the plaintiffs introduced as evidence a copy of a newspaper article, dated August 29, 2002, describing the

_____

[3]Blair and Tousignant filed separate but nearly-identical complaints and amended complaints in the initial action. Although the district court and the parties exclusively referred to each set of complaints in the singular, we use the proper forms to ensure clarity, as the cases were not consolidated until a later juncture.

[4]Rider sent this email to a recipient identified as "Patricia Falcone," not the "Thomas Falcone" named in the plaintiffs' second action. It is undisputed, however, that "Falcone," whether Patricia or Thomas, was never served.

action, which might have been the source of his knowledge. Subsequently, on November 25, 2002, Deputy Sheriff Ronald E. Richard attempted service upon Officers Daniel Dowd, Thomas Dowd, Duffy, McGinn, Moore, Ortiz, and Towler by leaving copies of the summonses and the original complaints with an individual named Katherine McNamara, a "Principal Clerk" at the police department. These returns of service were filed with the district court on December 2, 2002. No returns of service were filed for the City, Chief Gallagher, Officer Thomas, or Officer Falcone.

On January 8, 2004, 402 days after the plaintiffs' last action in the case, the district court mailed to Harris a Notice indicating that because the case had been inactive more than one year, it would be dismissed in thirty days pursuant to Local Rule 41.1 unless the plaintiffs took appropriate action. Blair and Tousignant learned of the Notice, which was entered on the docket, and chose to retain different counsel. On February 6, 2004, attorney Stephen CampoBasso filed an appearance on behalf of the plaintiffs and submitted motions requesting that the cases not be dismissed, which were granted. Harris withdrew as counsel of record on March 22, 2004, and he was subsequently suspended from the practice of law for a period of eighteen months for reasons that are not apparent on the face of the record.

On April 30, 2004, CampoBasso filed amended complaints on the plaintiffs' behalf. On June 8, 2004, CampoBasso obtained a

-4-

summons for Chief Gallagher, which was then served, via a purported agent named Jennifer Tauper, and a return of service was subsequently filed with the court on July 8, 2004. The record discloses that, on August 4, 2004, CampoBasso sent a letter to Attorney Rider, to which copies of a summons and an amended complaint were apparently appended, in the apparent expectation that Rider would assist in "service of the Summons" and then return it to him. No copy of the attachment is in the record. On November 16, 2004, CampoBasso sent follow-up correspondence, apparently due to his concern regarding Rider's silence. On December 14, 2004, CampoBasso directed yet another letter to Rider, requesting his "assistance in getting the Summonses[5] filed with the Court." He mentioned that his clients were growing "uneasy" regarding the lack of activity in the case. Unfortunately, the record does not explicate which defendant or defendants CampoBasso sought to serve in this manner. Regardless, CampoBasso's efforts, which might have been an attempt to obtain waiver of personal service under Rule 4(d), were apparently fruitless--and, in any event, the plaintiffs do not rely on this set of correspondence in any of their claims of error.

---

[5]CampoBasso's correspondence does not clearly indicate whether his query referred to only one or multiple summonses. CampoBasso seems to have used the singular and plural form of "summons" interchangeably.

CampoBasso took no further record action in the case and committed suicide in February 2005. On April 14, 2005, Jo Ann Citron and Michael Altman appeared on behalf of the plaintiffs as the third set of counsel of record. Proceeding expeditiously thereafter, on April 26, 2005, the plaintiffs filed a motion for default judgment against the defendants. In response, the defendants moved to dismiss the plaintiffs' claims, arguing that the plaintiffs had failed to effect personal service of process upon them. The defendants attached an affidavit from McNamara stating that she was not authorized to accept service for the defendant officers. Likewise, Officer Thomas Dowd submitted an affidavit indicating that he had not appointed McNamara as his agent for receiving service of process.

In response, the plaintiffs offered evidence purporting to show that McNamara had actual and apparent authority to accept process on behalf of the defendant officers, requested leave to conduct additional discovery to prove this agency relationship, and argued that even if no agency relationship existed, the district court should extend the time to serve the defendants. On March 13, 2006, the district court issued an opinion denying the plaintiffs relief and granting the defendants' motions to dismiss, without prejudice. The plaintiffs filed a timely Notice of Appeal on April 6, 2006, but subsequently requested and received a stay during the pendency of the action described below.

On June 26, 2006, the plaintiffs initiated a new action in federal district court, based on the same underlying conduct, seeking similar relief as before, asserting that the Massachusetts renewal statute revived their otherwise time-barred claims. The district court, based on its construction of the renewal statute, rejected the plaintiffs' contentions and dismissed the case. Again, the plaintiffs appealed; the two appeals have since been consolidated.

## II. ANALYSIS

### A. Effect of the Amended Complaints

The defendants argue that the filing of the April 30, 2004, amended complaints makes irrelevant any service of process, whether effective or not, that was performed in this case in relation to the original complaints. On the defendants' theory, the amended complaint--by being filed , and whether or not properly served--superseded the original complaint, and made it no longer available as a basis for pursuing this case. Under Federal Rule of Civil Procedure 5(a)(2), an amended complaint stating a new claim must be served on defendants, such as those here, who have failed to appear. The defendants argue that because the original complaint was superseded and the amended complaint was never served, dismissal of the suit for insufficient service of process was proper.

There are two flaws with the defendants' theory. First, it is doubtful that the unserved amended complaint in fact superseded the original complaint. See Anunciation v. W. Capital Fin. Servs. Corp., 97 F.3d 1458 (table), 1996 WL 534049, at *2 (9th Cir. Sept. 19, 1996) (unpublished); Int'l Controls Corp. v. Vesco, 556 F.2d 665, 669 (2d Cir. 1977). Second, the amended complaint did not in fact contain a new claim for relief, and therefore did not require service under Rule 5(a)(2). The defendants are correct that the original complaint contained a Statement indicating that either Count Nine or Count Ten--which, precisely, is ambiguous--was subject to a presentment requirement, and that an amended complaint would be filed in the future to actually urge the claim following satisfaction of the presentment requirement.

Dismissal on this basis would exalt form over substance because the original and amended complaints are substantively identical. Rule 5(a)(2) ensures that a party, having been served, is able make an informed decision not to answer a complaint without fearing additional exposure to liability for claims raised only in subsequent complaints that are never served. Here, we have no doubt that the original complaints provided the defendants with fair notice that the plaintiffs sought recovery on both Count Nine and Count Ten. See Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 55 (1st Cir. 2006). It is not as if satisfaction of the presentment requirement were somehow in doubt--the Statement revealed that

-8-

notice of the claim had already been provided, and the silence of the government agency is sufficient compliance with the statute. See Mass. Gen. Laws ch. 258, § 4.

Moreover, the factual predicate for the plaintiffs' claims did not change at all. See Ruiz-Rosa v. Rullan, 485 F.3d 150, 154 (1st Cir. 2007) (explaining that fair notice is provided where a complaint explains "who did what to whom, when, where, and why" (citations omitted)); Morales-Vallellanes v. Potter, 339 F.3d 9, 14 (1st Cir. 2003) (indicating that a complaint may "sufficiently raise[] a claim even if it points to no legal theory or . . . the wrong legal theory" (citation omitted)); DeNovellis v. Shalala, 124 F.3d 298, 310 n.6 (1st Cir. 1997) (holding that a complaint "need not clearly articulate the precise legal theories" to provide fair notice). Thus, because the amended complaints did not urge any new, substantive claims against any of the defendants, additional service of process was not required.[6] See Fed. R. Civ. P. 5(a)(2); accord Gilles v. United States, 906 F.2d 1386, 1389 (10th Cir. 1990) (explaining that dismissal based on improper service of an amended complaint is inappropriate so long as the

_____

[6]This conclusion is buttressed by the fact that Massachusetts does not require plaintiffs to plead presentment. Vasys v. Metro. Dist. Comm'n, 438 N.E.2d 836, 840 (Mass. 1982).

amended complaint "relates back" under Rule 15(c)[7] to a prior, properly served complaint).

## B.  Denial of Discovery and an Evidentiary Hearing

The district court dismissed the plaintiffs' original action for insufficient service of process under Rule 12(b)(5) of the Federal Rules of Civil Procedure.  The plaintiffs do not argue that the existing record substantiates that they provided adequate service of process to any of the defendants.  Rather, they contend that the district court erred by denying their request for limited discovery and an evidentiary hearing for the purpose of determining whether McNamara was authorized to accept service of process for the defendant officers.  In relevant part, Rule 4(e)(2) of the Federal Rules permits a plaintiff to effect service by "delivering a copy of [the summons and complaint] to an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)(2)(C).  This action was brought in a federal district court located in Massachusetts, and service was attempted in Massachusetts; therefore, the plaintiffs were also permitted to serve the defendants in accordance with Massachusetts state law. Fed. R. Civ. P. 4(e)(1).  Massachusetts likewise allows a plaintiff to effect service "[u]pon an individual by . . . delivering a copy

---

[7]Under Rule 15(c)(1)(B), an amended complaint relates back to a prior complaint where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading."

of the summons and of the complaint to an agent authorized by appointment or by statute to receive service of process." Mass. R. Civ. P. 4(d)(1). The district court declined the plaintiffs' requests for discovery and an evidentiary hearing based on its determination that they were merely "grasp[ing] at straws" without any "realistic prospect" of success. Blair v. City of Worcester, Nos. 02-40152-FDS, 02-40153-FDS, 2006 WL 1581582, at *6 (D. Mass. Mar. 13, 2006).

A district court generally retains "broad discretion in determining whether to grant jurisdictional[8] discovery." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001) (citation omitted). Accordingly, "[t]he standard for reversing a district court's decision to disallow jurisdictional discovery is high." Id. To obtain relief, the aggrieved party must show that "the lower court's discovery order was plainly wrong and resulted in substantial prejudice." Id. (citation omitted).[9]

---

[8]Several cases to which we cite technically pertain to dismissal pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction or Rule 12(b)(2) for lack of personal jurisdiction. Nonetheless, these cases lend insight to our present inquiry. We note that the parties and district court have cited such cases interchangeably, as well.

[9]As a preliminary matter, the plaintiffs argue that application of the ordinary abuse of discretion standard is inappropriate in this case. They reason that an erroneous legal assumption underlying the district court's analysis of the returns of service executed by Deputy Richard tainted its subsequent review of all of the issues pertaining to this appeal. Thus, the plaintiffs contend that de novo review is appropriate, given the purported legal error. Because we reverse even under the abuse of

-11-

In contrast, the threshold showing that a plaintiff must present to the district court to merit limited discovery is relatively low. See Surpitski v. Hughes-Keenan Corp., 362 F.2d 254, 255-256 (1st Cir. 1966) (per curiam) (explaining that a party should be allowed to conduct jurisdictional discovery when its position is not frivolous); see generally Swiss Am. Bank, 274 F.3d at 637 ("As a general matter, discovery . . . should be freely permitted . . . ." (internal quotation marks omitted) (quoting Edmond v. U.S. Postal Serv. Gen. Counsel, 949 F.2d 415, 425 (D.C. Cir. 1991))). Moreover, factual disputes regarding agency should typically be resolved only after a live hearing, see Rivera-Lopez v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992), in order to explore issues of "credibility and resolve . . . unanswered questions implicated by the parties' briefing." Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 34, (1st Cir. 2008). Indeed, we may find an abuse of discretion even where the lower court's decision is "by no means wholly unsupported by the record." Id. Thus, where a plaintiff can demonstrate the existence of a plausible factual disagreement or ambiguity, our jurisprudence favors permitting the litigants the opportunity to flesh out the record. See id.

Here, the returns of service executed by Deputy Richard state, in relevant part:

discretion standard, we need not resolve this question.

> I hereby certify and return that on 11/25/2002 at 11:59 AM I served a true and attested copy of the Summons, Complaint and Jury Demand in this action in the following manner:  To wit, by delivering in hand to KATHERIN [sic] MCNAMARA, agent, person in charge at the time of service for [the defendant officer] at WORCESTER POLICE DEPARTMENT, 9-11 LINCOLN SQ, WORCESTER, MA.

As the defendants point out, the language of the returns seems designed to indicate both service of an agent under Fed. R. Civ. P. 4(e)(2) and Mass. R. Civ. P. 4(d)(1), and service of a "person in charge of [a] business" under Mass. R. Civ. P. 4(d)(2), which provides one method for the service of corporations and unincorporated associations.  Quite obviously, Mass. R. Civ. P. 4(d)(2) is completely inapplicable to service of the defendant officers in their individual capacities.

A return of service generally serves as prima facie evidence that service was validly performed.  See, e.g., O'Brien v. R.J. O'Brien & Assocs., Inc., 998 F.2d 1394, 1398 (7th Cir. 1993); Curley v. Radow, No. 00-10956-GAO, 2007 WL 2060015, at *4-5 (D. Mass. July 16, 2007); Johnson v. Witkowski, 573 N.E.2d 513, 524 (Mass. App. Ct. 1991). Whether or not this return of service qualifies as such evidence, the defendants have adduced sufficient rebuttal evidence to refute any presumption of valid service.  In an affidavit, McNamara stated that:

> I have not been authorized or appointed by Peter Towler, Thomas Dowd, Daniel Dowd, Thomas C. Duffy, Edward McGinn, James Moore[,] or Jose Ortiz to accept service of process on

-13-

their behalf for lawsuits in which they are being sued, whether in their individual capacity or their official capacity, and I was not so authorized or appointed by them in November 2002.

Thus, McNamara specifically denied being appointed an agent by any of the defendant officers for whom returns of service were filed. Additionally, Officer Thomas Dowd provided an affidavit denying that he had "authorized any individual or entity to accept service of process on my behalf."

Under Massachusetts law, an affidavit is sufficient to refute the prima facie presumption created by a return of service. See Konan v. Carroll, 638 N.E. 2d 936, 938 (Mass. App. Ct. 1994) (citing Farley v. Spraque, 372 N.E.2d 1298, 1301-02 (Mass. 1978)); see also Maniscaclo v. Kenworthy, No. 03-P-626, 815 N.E.2d 656 (table), 2004 WL 2185422, at *3 (Mass. App. Ct. Sept. 28, 2004) (per curiam) ("Where, as here, [the] affidavit is uncontradicted other than by the deputy's return, the affidavit controls."). Similarly, federal courts have held that an affidavit denying agency, standing alone, may be sufficient to overcome the presumption of proper service created by the return of service. See Hornick v. S. & M. Trucking Co., 208 F. Supp. 950, 952 (M.D. Pa. 1962); Metropolitan Theatre Co. v. Warner Bros. Pictures, 16 F.R.D. 391, 392-93 (S.D.N.Y. 1954); Puett Elec. Starting Gate Corp. v. Thistle Down Co., 2 F.R.D. 550, 551 (N.D. Ohio 1942); see also Elibee v. Leonard, 226 F. App'x 351, 356 (5th Cir. 2007) (per

curiam) (unpublished) (holding averments of defendants sufficient to refute agency relationship); Gottlieb v. Sandia Am. Corp., 452 F.2d 510, 514 n.5 (3rd Cir. 1971) (stating that "although a marshal's return is not conclusive on the question of service on an agent, it will stand in the absence of proof to the contrary").

Hence, the defendants effectively rebutted any presumption that might have arisen from the returns of service executed by Deputy Richard. At that point, the ultimate burden of proving proper service returned to the plaintiffs. See Rivera-Lopez, 979 F.2d at 887 (indicating "that, once challenged, plaintiffs have the burden of proving proper service"). We emphasize, however, that the real issue at hand is not whether the plaintiffs proved service--but merely whether they adduced sufficient evidence to warrant limited discovery and an evidentiary hearing. See id.

The plaintiffs have mustered evidence--specifically, the Second Affidavit of Theresa Labriola (one of their attorneys), a document known as Worcester Police Policy and Procedure No. 351 ("Policy No. 351"), and returns of service for Officers Daniel Dowd, Thomas Dowd, Duffy, McGinn, Moore, Ortiz, and Towler in a different case--to refute McNamara's and Officer Thomas Dowd's affidavits. We examine each of these items in turn.

First, we address the Labriola affidavit. In the affidavit, Labriola indicates that Deputy Richard informed her that

-15-

he had served Worcester police officers "hundreds" of times in the past by leaving copies of the complaint and summons at the office of the chief of police, as he did here. At some point, he was supposedly "informed that the Chief's Office would no longer accept any summonses or complaints for the Worcester City Police Officers" (emphasis added). The affidavit further states that Labriola corroborated this information with another Deputy Sheriff, Rusty Valery. Neither Deputy Richard nor Deputy Valery provided an affidavit substantiating these remarks. While not based on first-hand knowledge, Labriola's representations are sufficient to militate in favor of discovery and an evidentiary hearing. Although Deputy Richard apparently refused to supply an affidavit, he would presumably answer to a court-authorized subpoena.

Moreover, the Labriola affidavit alleges that the plaintiffs attempted to obtain "cop[ies] of all documents concerning all summonses received by the Worcester Police Department from June 2002 through December 2002," to ascertain whether the defendant officers routinely acquiesced to service of process via the method attempted in this case. According to Labriola, the Worcester Police Department never responded to this request; moreover, she stated that Rider, the City's attorney, agreed to help her obtain the information, but that he never followed through. Limited discovery and an evidentiary hearing would permit the plaintiffs to uncover whether there is additional

-16-

evidence of service effected in the manner attempted in this case. If the defendant officers have accepted service in this fashion on a number of occasions, then a strong argument exists that McNamara possessed implied, actual authority to accept service of process on their behalf. See In re Focus Media Inc., 387 F.3d 1077, 1082 (9th Cir. 2004) (holding that, while a purported agent must possess actual authority to accept service of process, such authority may be implied rather than express); accord United States v. Ziegler Bolt & Parts Co., 111 F.3d 878, 881 (Fed. Cir. 1997); United States v. Balanovski, 236 F.2d 298, 303 (2d Cir. 1956); see generally Inn Foods, Inc. v. Equitable Co-op. Bank, 45 F.3d 594, 597 (1st Cir. 1995) (explaining basic, common law principles of agency and implied authority in different context).

Second, the plaintiffs point to Policy No. 351, which they suggest establishes apparent authority for McNamara to accept service of process on behalf of the defendant officers. We disagree; the policy lends negligible support to the plaintiffs' assertion of agency. The policy states that "[a]ll summonses received by the Worcester Police Department shall be recorded in the office of the Chief of Police. The summons and travel fee shall be forwarded to the officer named in the summons." As the district court recognized, however, the policy is labeled "Revenue Management" and concerns the acceptance of summonses and fees for police officers to appear as witnesses. Indeed, Policy No. 351

states that its purpose "is to provide guidelines for the acceptance and receipt of monies received by any police personnel," so as to prevent conflicts of interests. The language of the policy simply does not comport with the interpretation that the plaintiffs ascribe to it. Even if it did, nothing in the policy indicates that any of the defendant officers actually appointed--or were required to appoint--McNamara, or any other individual, as an agent for service of process. See Maiz v. Virani, 311 F.3d 334, 340 (5th Cir. 2002) (requiring actual authority) (citing United States v. $184,505.01, 72 F.3d 1160, 1164 n.10 (3rd Cir. 1995)); see also Ziegler Bolt & Parts Co., 111 F.3d at 881 (mandating express or implied actual authority, but noting that some courts have found implied actual authority based on "'the doctrine of apparent authority or agency by estoppel'" (quoting 1 Robert C. Casad, Jurisdiction in Civil Action § 301.[2][b], at 3-12 to 3-13 (1991))). At most, Policy No. 351 serves as circumstantial evidence that McNamara may have accepted summonses on the defendant officers' behalf in a different context.

Third, the plaintiffs point to a related case, Boucher v. City of Worcester, No. 04-12673-REK (D. Mass. Aug. 22, 2006), in which certain of the defendant officers appear to have been served in a similar manner without any objection. Thus, the plaintiffs have shown that the defendant officers have, on at least one occasion, acquiesced to a similar attempt at service. In Rivera-

-18-

Lopez, a factually similar case, we reversed a lower court's determination that a defendant was estopped from denying an agency relationship with a secretary because "[t]he acceptance of service [by a secretary] in prior cases unconnected with plaintiff might have been specially authorized, or defendant . . . might have chosen to waive formalities." 979 F.2d at 887. Nevertheless, we remanded for further proceedings to determine the actual authority of the secretary to accept service of process for the defendant. Id. We explained that, "[i]n view of [the issue's] importance, there should be a hearing on live testimony, not on conflicting affidavits." Id. The record before us is silent as to why the defendant officers did not challenge service in Boucher. The plaintiffs' posited explanation--that they did not because McNamara was an agent of the defendant officers--is plausible. It is also credible that the defendants, for reasons of their own, affirmatively decided to waive service in that case, or even that their attorneys simply neglected to raise a valid defense. See Rivera-Lopez, 979 F.2d at 887. An evidentiary hearing, with live testimony, would help to resolve this unanswered question.

In summary, the circumstantial evidence adduced by the plaintiffs gives rise to a permissible inference that the defendant officers, in the past, authorized McNamara--or, perhaps, the clerks in the Office of the Chief of Police--to act as their agent for

-19-

service of process.  The self-serving[10] affidavits submitted by the defendants are not so powerful as to resolve the matter definitively, at least where the plaintiffs have introduced some contravening evidence and have had no opportunity to conduct related discovery and elicit testimony from McNamara and the defendant officers.  Thus, the district court was mistaken in its assessment that the plaintiffs' request for limited discovery and an evidentiary hearing was nothing more than a "grasp at straws." Moreover, the plaintiffs have quite clearly demonstrated substantial prejudice, given the district court's reasons for dismissing the original action.

Accordingly, we hold that the district court abused its discretion by dismissing the action without first permitting limited discovery and holding an evidentiary hearing, given the persistent factual uncertainty concerning agency.[11]  See id.; see

---

[10]Although McNamara is not a defendant, she is nevertheless affiliated with them.

[11]Because we remand for limited discovery and an evidentiary hearing, we decline to address the plaintiffs' additional challenges.  We note, however, that evidence adduced following remand might alter the calculus for application of the Massachusetts renewal statute by elucidating the nature of Deputy Richard's erroneous service or the reasonableness of the plaintiffs' reliance upon it, should the district court again dismiss the original action based on a finding that McNamara was not authorized to serve as an agent for the defendant officers. For example, if the defendant officers accepted service of process in this manner in many cases, but only due to multiple acts of waiver, the plaintiffs might be deemed justified in mistakenly-but-reasonably relying upon such an attempt at service.

also <u>Surpitski</u>, 362 F.2d at 256 ("When the fish is identified, and the question is whether it is in the pond, we know no reason to deny a plaintiff the customary license [to conduct discovery]."). However, the record is devoid of evidence describing any attempt at service of either Thomas or Falcone, and the plaintiffs have not offered any explanation to mitigate this apparent failure. Additionally, the plaintiffs have abandoned their claims against the City and Chief Gallagher. Consequently, these defendants were properly dismissed from the case. If after discovery the district court allows the first action to proceed, it may dismiss the second action as duplicative; if the district court dismisses the first action based on insufficient service of process, then it should proceed to reconsider whether the renewal statute saves the second action.

### III. CONCLUSION

For the foregoing reasons, we reverse the district court's dismissal of the original and the second action with respect to Officers Daniel Dowd, Thomas Dowd, Duffy, McGinn, Moore, Ortiz, and Towler. We remand for limited discovery and an evidentiary hearing. We affirm the district court's dismissal of the City of Worcester, Chief Gallagher, and Officers Falcone and Thomas from the original action.

Affirmed in part, reversed in part, and remanded for further proceedings. Costs are awarded in favor of appellants.

-21-