INSURANCE COMPANY OF PUERTO RICO y MUNICIPIO DE BAYAMÓN, demandantes y recurrentes, *v.* SALVADOR RUIZ MORALES, demandado y recurrido.

*Número:* O-67-10     *Resuelto:* 6 de junio de 1968

*Castro & Castro,* abogados de los recurrentes; *Rafael S. Fuentes Rivera* y *José Pérez Rodríguez,* abogados del recurrido.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Se plantean en este recurso las cuestiones usuales en relación con la responsabilidad y la cuantía de los daños provenientes de una colisión entre dos vehículos de motor en una intersección de vías de tránsito. La prueba sobre la responsabilidad fue conflictiva. No encontramos en el récord justificación alguna para intervenir con la apreciación de la misma por el tribunal de instancia al concluir que "el demandante reconvencionado, el Municipio de Bayamón, incurrió en un 85% de la negligencia y el demandado reconvencionista incurrió en un 15% de la negligencia en la ocu-

rrencia de este accidente." Tampoco encontramos motivo para alterar la cuantía de los daños.

Analizamos a continuación las circunstancias y los hechos de este caso.

El Municipio de Bayamón y su compañía aseguradora, Insurance Company of Puerto Rico, radicaron una demanda de daños y perjuicios ascendentes a $1,827.20 en el Tribunal de Distrito, Sala de Bayamón, contra Salvador Ruiz Morales quien al contestar la demanda incluyó una reconvención. Los codemandantes replicaron solicitando la desestimación de dicha reconvención.

El Tribunal de Distrito dictó sentencia declarando con lugar la reconvención y sin lugar la demanda, condenando a los demandantes reconvencionados a pagar en forma solidaria al Sr. Ruiz Morales, demandado reconvencionista las siguientes cantidades:

$7,326.00  por sufrimientos físicos y mentales
  400.00  por daños a su automóvil
  280.00  pérdida de ingresos
  100.00  gastos médicos
   20.00  medicinas
  700.00  honorarios de abogado

La suma total de la indemnización es de $8,826.00 a pagarse en forma solidaria por los demandantes-reconvencionados pero en cuanto a la Insurance Company of Puerto Rico, dentro de los límites de su póliza de $5,000.00.

Esta sentencia fue apelada al Tribunal Superior, Sala de Bayamón. El Tribunal Superior desestimó la reconvención contra el Municipio de Bayamón pero confirmó la sentencia en contra de la Insurance Company of Puerto Rico por la suma total de $7,976.41 después de restar $131.59, deducción correspondiente al 15% de los daños sufridos por el demandante, Municipio de Bayamón, por la negligencia concurrente del demandador-convencionista. El Tribunal Superior concluyó que la indemnización por sufrimientos físicos

y mentales concedida por el Tribunal de Distrito no era excesiva.

Insurance Company of Puerto Rico radicó una moción de reconsideración ante el Tribunal Superior solicitando se enmendara la sentencia para limitarla al monto de la póliza de seguros, según lo había hecho el Tribunal de Distrito. El 4 de enero de 1967 el Tribunal Superior dictó una resolución modificando dicha sentencia *"a los fines de reducir la partida concedida como indemnización por sufrimientos físicos y mentales a la cantidad de $4,218.00;* de forma y manera que quede ajustada la indemnización total otorgada a los límites de la póliza en que se basa la obligación de la parte demandante y reconvencionada." (Énfasis nuestro.)

Tanto Insurance Company of Puerto Rico, demandante-reconvencionada, como el Sr. Salvador Ruiz Morales, demandado-reconvencionista, solicitaron se expidiera *certiorari* para revisar la sentencia del Tribunal Superior. El primero de mayo de 1967 este Tribunal dictó resolución en la cual se acordó consolidar los dos recursos de *certiorari* por tratarse de la revisión de la misma sentencia, a los fines de su ulterior tramitación y resolución. En esta fecha disponemos de ambos recursos mediante opiniones separadas.

El 14 de julio de 1964 en la intersección entre la calle Nogal y la avenida Laurel de la Urbanización Lomas Verdes en Bayamón ocurrió un accidente automovilístico entre una camioneta Dodge, propiedad del Municipio de Bayamón y guiada por Ángel R. Atanacio Hernández en el desempeño de su empleo, con el vehículo Chrysler propiedad de y manejado por Salvador Ruiz Morales.

El Tribunal Superior concluyó que no había base para variar la apreciación de la prueba hecha por el Tribunal de Distrito en cuanto a la forma en que ocurrió el accidente. El tribunal sentenciador dio la siguiente descripción sobre este aspecto.

"El accidente antes mencionado ocurrió de la siguiente manera:

Mientras el demandado-reconvencionista, Salvador Ruiz Morales, discurría manejando su automóvil antes descrito por la avenida Laurel de Sur a Norte a una velocidad de 30 a 35 millas por hora aproximadamente, fue interceptado súbitamente por el vehículo antes descrito propiedad del Municipio de Bayamón y guiado para dicha fecha por Angel R. Atanacio Hernández, quien discurría guiando dicho automóvil por la calle Nogal en dirección de Oeste a Este, y para quien al entrar a dicha intersección existía, para la fecha del accidente, un rótulo de 'PARE', el cual no obedeció, interceptando de tal manera el libre tránsito por el cual discurría el demandado-reconvencionista en su automóvil, de tal suerte que el vehículo Dodge fue impactado por el Chrysler por la goma trasera derecha con la parte del frente del Chrysler causándole daños . . . yendo con el impacto el vehículo Dodge a impactar y detenerse contra una verja que queda en la segunda esquina de la intersección entre la avenida Laurel y la calle Nogal . . . . Además de no detenerse el vehículo Dodge que discurría por la calle Nogal, que es de menor tránsito, a la avenida Laurel, discurría a una velocidad exagerada y tras no detenerse en el 'PARE' y tras ir a velocidad exagerada, y tras ir por la vía de menor tránsito, cuando percibe la presencia del vehículo Chrysler, acelera su velocidad de tal manera, y de tal suerte que inevitablemente tuvo que ser impactado por el vehículo Chrysler."

En cuanto a las lesiones que sufrió el recurrido el tribunal sentenciador concluyó que:

"Como resultado del accidente el señor Salvador Ruiz Morales sufrió una fractura abierta conminuta de la patela izquierda, habiéndose partido el hueso en pedacitos, habiéndosele hecho una operación en la herida para evitar infección. Se le operó por segunda vez en cuanto a la fractura en sí respecta, por lo cual fue necesario hacerle una herida como de diez pulgadas de largo en forma de 'U' en la parte inferior de la rodilla. Después de habérsele saturado la herida y habérsele aplicado el tratamiento adecuado, se le puso yeso. El 31 de julio de 1964 se le hizo una patelectomía (patellectomy) y nuevamente le fue aplicado yeso, el cual le fue removido el primero de sep-

tiembre de 1964. Fue atendido entre otros, por los doctores José Antonio Santa, médico residente del Hospital Universitario y por el Dr. Juan Llompart, médico especialista en cirugía ortopédica y fracturas. La herida está bien curada superficialmente aunque tiene dos (2) cicatrices, una grande en forma de 'U' de alrededor de diez pulgadas de largo y otra pequeña; sin lugar a dudas son de carácter permanente. Tiene hinchazón de la pierna izquierda desde el tobillo hasta la porción distal de la pierna, estando alterada la función de la rodilla en vista de la operación de la patela como resultado de la fractura recibida en el accidente antes mencionado. Tiene una incapacidad permanente de los movimientos de su pierna izquierda de un mínimo de un 25 al 30% de carácter permanente (así se desprende de la prueba médica, inclusive de la declaración del Dr. Juan Llompart, traída por los demandantes-reconvencionados como prueba de refutación). Hay además atrofia muscular que afecta el funcionamiento de dicha rodilla en vista de que la patela completa le fue removida. El señor Salvador Ruiz Morales fue también atendido por los Doctores Pujadas, en tres o cuatro ocasiones a quienes pagó por sus servicios $40.00 y gastó como $20.00 en medicinas y por el Dr. Carranza que lo vio siete u ocho veces, a quien le pagó $60.00 por honorarios profesionales.

Que a consecuencias del accidente del señor Ruiz estuvo ausente de su trabajo, en el cual devengaba un sueldo de $70.00 semanales, por espacio de cuatro meses, pero su patrono le continuó pagando dicho sueldo."

El Tribunal de Distrito dictaminó, además, que:

"Un sereno análisis de los hechos antes expresados nos lleva a la conclusión de derecho de que el demandante-reconvencionado incurrió en un 85% de la negligencia y que el demandado-reconvencionista incurrió en un 15% de negligencia en la ocurrencia de este accidente, y así al dictarse la sentencia que más adelante se dictará declarando sin lugar esta demanda y con lugar la reconvención, se hace constar expresamente se ha tomado en consideración el por ciento del grado de negligencia de ambas partes al fijar las cantidades en dicha sentencia. Es decir, que al determinar que ambas partes fueron negligentes en el grado de negligencia antes mencionado, al dictarse sentencia en la forma antes mencionada, este Juez ha determinado

el grado de culpa atribuible a ambas partes al fijar la compensación que más adelante se fijará y dicha cantidad se ha fijado después de haber hecho la correspondiente reducción por la contributoria del demandado-reconvencionista. *Serrano Vda. Cartagena* vs. *Lugo Ramírez*, 83 D.P.R. 300."

Apelada la sentencia del Tribunal de Distrito al Tribunal Superior, éste confirmó el dictamen de aquélla, excepto que determinó que:

". . . el Tribunal de Distrito debió hacer en la cuantía concedida, una deducción correspondiente al 15% de los daños que sufrió el demandante, Municipio de Bayamón, como resultado del mismo por ciento de negligencia en que incurrió el conductor demandado-reconvencionista. Esta circunstancia debe llevar una reducción de $131.59 de la partida concedida al demandado en concepto de indemnización general por daños y perjuicios.

. . . . . . . .

Sin embargo, el Tribunal de Primera Instancia sí incurrió en el séptimo error señalado, al declarar con lugar la reconvención contra el Municipio de Bayamón y al condenar a esa entidad a pagar los daños y perjuicios determinados como compensables. Del récord del caso surge que el demandado no cumplió con el requisito de orden jurisdiccional dispuesto en el art. 96 de la Ley Municipal. 21 L.P.R.A. 1603. Y esta circunstancia debe conllevar la desestimación de la acción contra el municipio. *García* v. *Northern Assurance*, 1965, Col. Abog. 74 [92 D.P.R. 245] ; *Cuchi Coll* v. *Gobierno de la Capital*, 87 D.P.R. 1966 [*sic*]* ; *Mangual* v. *Tribunal Superior*, 1963, Col. Abog. 122. (88 D.P.R. 491.)

La sentencia dictada en este caso, dadas las circunstancias señaladas, se modifica en la forma siguiente:

(1) Se desestima la reconvención con respecto al codemandante Municipio de Bayamón.

(2) Se le impone a la demandante Insurance Co. of P.R., la obligación de satisfacer al demandado-reconvencionista la suma de $7,194.41 como indemnización correspondiente por sufrimientos físicos y mentales; la cantidad de $400 correspondientes a la pérdida del automóvil del demandado; la cantidad

---

* 93 D.P.R. 734.

de $280.00 por pérdida de ingreso, más la suma de $102.00 por gastos médicos y de medicinas.

La compañía de seguros apelante deberá satisfacer las costas y $700.00 de honorarios de abogado."

Posteriormente se enmendó la sentencia para reducir la partida de indemnización por sufrimientos físicos y mentales "a la suma de $4,128 de forma y manera que quede ajustada la indemnización total otorgada a los límites de la póliza en que se basa la obligación de la parte demandante, reconvencionada."

Apunta la aseguradora que el tribunal de instancia incidió (1) al concluir que el conductor del vehículo del municipio lo conducía por la calle Nogal y no por la avenida Laurel de la Urbanización Lomas Verdes y que el accidente se debió a su negligencia; (2) al no condenar al recurrido Sr. Ruiz a pagar a la recurrente lo que ésta pagó por los daños que sufrió el vehículo del municipio; (3) al concluir que "el chófer fue culpable en un 85% por la ocurrencia del accidente;" (4) al conceder una cuantía excesiva de daños; (5) al condenar a la recurrente a pagar al recurrido Sr. Ruiz la suma de $700.00 por concepto de honorarios de abogado y (6) al condenar a la aseguradora a pagar daños en exceso de la póliza de seguro que expidió la aseguradora recurrente y que cubre la reclamación del Sr. Ruiz.

1, 2, 3.—Las circunstancias de este caso son muy parecidas a las de *Negrón Pumarejo* v. *Calderón Sánchez*, 94 D.P.R. 198 (1967). En ambos casos la colisión de los vehículos ocurrió en una intersección de manera que el vehículo que discurría por la calle y entró a la intersección sin antes parar fue el principal causante del accidente. En ambos casos la prueba fue conflictiva con respecto a cuál de los vehículos discurría por la avenida y cuál por la calle.

El conductor de la camioneta Dodge del municipio recurrente, Ángel Rafael Atanasio Hernández, testificó que en el momento del accidente él conducía dicho vehículo de Santa

Juanita hacia Lomas Verdes por la avenida Laurel de vuelta a su oficina en la carretera 174 de Bayamón; que entrando a la intersección de esta avenida con la calle Nogal salió de ésta un vehículo conducido por el Sr. Ruiz Morales, más o menos a 50 ó 60 millas por hora y lo chocó por la parte trasera izquierda; que la camioneta dio tres vueltas a la derecha y cayó sobre la verja de una casa en una de las esquinas de la intersección. En contrainterrogatorio testificó que él salía de la calle Comerío a donde fue a llevar a un empleado a su residencia desde la oficina de Obras Públicas del municipio donde ambos trabajan, que queda frente a la de la Autoridad de las Fuentes Fluviales en Bayamón; que la distancia a Lomas Verdes es más cerca doblando por unas calles en lugar de llegar hasta la avenida Laurel; que en otras ocasiones, al ir hacia Lomas Verdes ha viajado por la calle Nogal; que ésta es la ruta más corta hacia la oficina de Fuentes Fluviales. Dijo que ese día no escogió la ruta más corta porque "Esas calles que atrechan son más inconvenientes pues hay más intersecciones."

Roberto González, amigo de Hernández, testificó que estaba en la intersección, esperando un carro público para ir a su trabajo en un supermercado, cuando ocurrió el accidente; que vio la camioneta Dodge bajando por la avenida Laurel de Santa Juanita en dirección a Lomas Verdes y que el otro vehículo corría por la calle Nogal; que éste no se detuvo antes de llegar a la intersección y fue a chocar con la camioneta. En contrainterrogatorio dijo que del lugar del accidente se fue a su trabajo donde estampó su tarjeta indicativa de las horas de entrada y salida. Sin embargo, hubo prueba de que él no concurrió al trabajo ese día y en contrainterrogatorio admitió haber regresado a su casa allí cerca con Hernández a fin de que éste telefonease lo ocurrido a su oficina. El policía que realizó la investigación del accidente testificó que el Sr. Ruiz Morales le admitió

que él iba por la calle Nogal de Oeste a Este, admisión que éste negó.

El Sr. Ruiz Morales testificó que trabaja en una fábrica de terrazo situada en la carretera 174, km. 5, que va de Bayamón a Aguas Buenas; que de allí salió a llevar ropa a lavar a la lavandería Baronet en la avenida Laurel, en la Urbanización Lomas Verdes; que siguió la carretera 174 hasta el cruce de Minillas y allí dobló a la izquierda y después a la izquierda en la primera cuadra y continuó derecho por la avenida Laurel; estuvo en la lavandería cinco minutos entregando y recogiendo ropa; allí vio a los esposos dueños de la lavandería; de allí salió por la avenida Laurel "De arriba hacia abajo, a la carretera 174" con el objeto de regresar a la fábrica. Testificó que al llegar a la intersección de la avenida Laurel con la calle Nogal "yo venía como a 35 ó 40 millas; entonces salía ese tipo [Hernández] en una guagua roja" (la camioneta Dodge del municipio) y añadió:

"R.—Y Cuando uno sube hay un PARE en la misma esquina y yo pensé que él se iba a parar entre las dos intersecciones porque venía tan a la carrera y entonces él lo que hizo fue que le dio más velocidad y yo con el carro mío le di de frente, le he dado con la parte de atrás de la rueda, le he dado y lo he tirado sobre una verja, pero fue que él venía con tanta velocidad que yo no pude, traté de parar el carro pero no pude, lo alcancé en la rueda de atrás porque él trató de pasarme, yo creí que se iba a parar en la intersección. Entonces él se lanzó a ver si me podía pasar y lo agarré en la parte de atrás y lo tiré contra la verja.

. . . . . . . .

R. No lo hizo [pararse]. Parece que pensó hacerlo en el centro de la avenida, parece que como me vio tan cerca, él me vio y parece que pensó que con la velocidad que tenía no le daba tiempo, entonces aceleró más por eso fue que lo alcancé, si hubiese parado en la intersección me hubiese dado tiempo a pasar a mí y no le hubiese sucedido nada."

Testificó que la parte delantera de su vehículo dio con la rueda trasera derecha de la camioneta la cual dio contra una verja, giró y quedó mirando en dirección opuesta mientras que su vehículo quedó en la misma dirección que iba. Dijo que lo primero que hizo inmediatamente antes de la colisión fue moderar la velocidad a ver si el otro vehículo pasaba; puso los frenos para moderar la velocidad pero no frenó para evitar el choque porque si frena es más grande el daño.

El dueño de la lavandería corroboró el testimonio de Ruiz de que éste había estado allí poco antes del accidente llegando y regresando por la avenida Laurel.

El Sr. Acosta Amador, dueño de un taller de mecánica y hojalatería vio la camioneta chocada en el garage del municipio. Tenía la parte izquierda bastante chocada; poca cosa en la derecha donde el mayor daño fue en la rueda pues tenía la goma rota como si el vehículo tuviese un fijo roto; que el impacto sobre la rueda derecha tuvo que ser bastante fuerte para romper el eje. Testificó que el vehículo mostraba su parte izquierda "bastante chocada" pero no pudo informar si esos desperfectos "los causó una verja con varillas de hierro o si fue un impacto de vehículo."

A la luz del anterior resumen, no hay base alguna para concluir que el tribunal incidió al concluir que Hernández conducía la camioneta por la calle Nogal y que la colisión se debió en un 85% a su negligencia en no parar antes de entrar a la referida intersección o que esas conclusiones "sean claramente erróneas o que estén en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida." *Negrón Pumarejo* v. *Calderón Sánchez*, supra. La prueba más bien tiende a demostrar que en verdad el que se dirigía por la calle Nogal era Hernández en la camioneta en cuestión y que el accidente se debió principalmente a su culpa. Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 921; *Flores Ortiz* v. *F. & J. M. Carrera Inc.*,

174

83 D.P.R. 332 (1961); *Bezdek* v. *Patrick*, 103 N.W.2d 318 (Neb. 1960); *Paddack* v. *Patrick*, 79 N.W.2d 701 (Neb. 1956).

4.—El testimonio médico ampliamente justifica las conclusiones del Tribunal de Distrito sobre los daños sufridos por el Sr. Ruiz, según fueron reducidos por el Tribunal Superior. *Santaella Negrón* v. *Licari*, 83 D.P.R. 887 (1961); *Baralt* v. *Báez*, 78 D.P.R. 123 (1955).

5.—El apuntamiento sobre la concesión de honorarios de abogado ha sido sometido con el comentario de que "depende de la decisión de este Tribunal con respecto a los demás errores." Esto implica que al no sostener este Tribunal los anteriores apuntamientos, el tribunal de instancia no incidió al conceder los honorarios de abogado que la recurrente impugna. Así concluimos.

6.—El apuntamiento al efecto de que se concedieron daños en exceso del límite provisto por la póliza de seguro carece de fundamento ya que el Tribunal Superior modificó la sentencia con el fin de reducir la cuantía de los daños de acuerdo con la referida limitación. Como la aseguradora había extendido al municipio dentro de la misma póliza una cubierta de los daños a la propiedad, hasta la cantidad de $5,000, aquélla responde separadamente, y en adición a la partida por sufrimientos físicos y mentales, por los $400 de daños al vehículo y los $280 de pérdida de ingreso.

Por lo tanto debe modificarse la sentencia al efecto de (1) reducir la responsabilidad de la compañía aseguradora a la suma de $5,000 que es el límite de responsabilidad asumido por ella de acuerdo con la póliza correspondiente; y (2) que dicha aseguradora responda, además, por los $400 de daños al vehículo del recurrido y por los $280 de pérdida de ingreso.

*Así modificada se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de Bayamón.*