# United States Court of Appeals

## For the First Circuit

No.  03-2256

JOAN RODRIGUEZ; DOMINGO DIAZ ROJAS; CONJUGAL PARTNERSHIP DIAZ-
RODRIGUEZ,

Plaintiffs, Appellees,

v.

AMERICAN INTERNATIONAL INSURANCE COMPANY OF PUERTO RICO;
CORPORACION DE SERVICIOS INTEGRALES DE SALUD DEL AREA DE
BARRANQUITAS, COROZAL, NARANJITO Y OROCOVIS,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before

Torruella, Lynch, and Lipez, Circuit Judges.

Jeannette López de Victoria, with whom Pinto-Lugo, Oliveras &
Ortiz, PSC was on brief, for appellants.
Ramon L. Walker Merino, with whom Walker Merino Law Office was
on brief, for appellees.

March 23, 2005

**LYNCH, Circuit Judge**.  The question presented is whether a regional diagnostic and treatment center which treats only ambulatory patients and has an emergency room independent of a hospital is subject to the requirements of the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd.

The district court, ruling on a suit by the parents of a four-month old baby girl who died after being seen in the emergency room of a Diagnostic and Treatment Center ("Centro de Diagnóstico y Tratamiento") ("CDT") in Corozal, Puerto Rico, held that an EMTALA suit was actionable.  We accepted the district court's certification of this dispositive issue of law for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  We reverse, and order dismissal of the suit.

## I.

The plaintiffs, a married couple, had a daughter, Lilliam Diaz Rodriguez, who was born on October 10, 2000, with a combination of congenital cardiovascular defects which made her prone to cyanosis.

Lilliam vomited twice on March 3, 2001, and was taken by her mother to the emergency ward at the Corozal CDT at 9:00 PM for respiratory difficulties.  The emergency ward doctor at the CDT decided to transfer the child to the Pediatric Hospital at the Puerto Rico Medical Center and inserted an endotracheal tube in Lilliam.  At 2:00 AM the next morning the child was transported to

the Puerto Rico Medical Center with generalized cyanosis, and Lilliam died sometime after arriving there.

The plaintiffs filed a federal suit for damages against Corporacion de Servicios Integrales de Salud del Area de Barranquitas, Corozal, Naranjito y Orocovis ("Corporacion"), the owner of the Corozal CDT, and American International Insurance Company of Puerto Rico ("AIICO"), Corporacion's insurer.[1] The plaintiffs asserted federal subject matter jurisdiction by alleging that the defendants violated EMTALA by failing to provide the child with an "appropriate medical screening examination" so as to detect her emergency condition and by failing to stabilize the child's condition properly before transferring her. See 42 U.S.C. § 1395dd(a)-(c). The complaint also alleged a Puerto Rico law claim of medical malpractice by the defendants, and invoked the federal court's supplemental jurisdiction.

The defendants moved for summary judgment. The defendants, inter alia, denied the existence of federal subject matter jurisdiction, contending that EMTALA does not apply to the allegations in the complaint because the Corozal CDT is not a "hospital" within the meaning of EMTALA.

---

[1]The plaintiffs also named Aeromed Services, Inc., which provided the ambulance transportation from the Corozal CDT to the Puerto Rico Medical Center, as a defendant. Aeromed is not involved in this appeal.

The district court denied the defendants' motion for summary judgment on May 9, 2003. In its Opinion and Order, the district court concluded that "the provisions of EMTALA apply to CDTs in Puerto Rico that offer twenty-four hour emergency room services, and that consequently, Plaintiffs have a colorable claim under said statute."

The defendants then sought to certify the district court's order for interlocutory appeal. After initially denying the motion, the district court ultimately certified the jurisdictional issue of whether the provisions of EMTALA are applicable to CDTs for consideration before this court. Pursuant to 28 U.S.C. § 1292(b), this court allowed the interlocutory appeal after both appellants and appellees stipulated that the following facts are not disputed:

> 1. The Corozal CDT is licensed under Puerto Rico law to operate as a diagnostic and treatment center.
> 2. The Corozal CDT provides 24-hour emergency room services.
> 3. The Corozal CDT has executed a Medicare Provider "Part B" agreement.
> 4. The Corozal CDT is not a hospital-based facility nor is it attached to a hospital.
> 5. The Corozal CDT is not an inpatient facility.

## II.

We review de novo the grant or denial of summary judgment, Univ. Emergency Med. Found. v. Rapier Invs., Ltd., 197 F.3d 18, 20 n.4 (1st Cir. 1999), as well as pure issues of law,

Rational Software Corp. v. Sterling Corp., 393 F.3d 276, 276 (1st Cir. 2005).

In 1986 Congress enacted EMTALA in large part to solve the problem of "dumping" of uninsured patients -- the problem of hospital emergency rooms refusing to treat or transferring indigent patients to public hospitals without first assessing and/or stabilizing the patient's condition. See Correa v. Hosp. San Francisco, 69 F.3d 1184, 1189 (1st Cir. 1995). EMTALA imposed some limited substantive requirements on emergency rooms of hospitals participating in the federal Medicare program. Specifically EMTALA requires (1) that "a participating hospital afford an appropriate medical screening to all persons who come to its emergency room seeking medical assistance," and (2) "if an emergency medical condition exists, the participating hospital must render the services that are necessary to stabilize the patient's condition . . . unless transferring the patient to another facility is medically indicated and can be accomplished with relative safety." Id. at 1190; 42 U.S.C. § 1395dd(a)-(c).

EMTALA created a private cause of action for damages for violations of the Act against "participating hospitals." 42 U.S.C. § 1395dd(d)(2)(A). Congress conditioned those hospitals' continued participation in the federal Medicare program on acceptance of the duties imposed by EMTALA, "[n]eeding a carrot to make health-care providers more receptive to the stick." Correa, 69 F.3d at 1189.

The question of law posed by this case is whether a CDT, defined by Puerto Rico law as "an independent facility . . . which provides community services for the diagnosis and treatment of ambulatory patients under the professional supervision of persons licensed to practice medicine, surgery or dentistry in Puerto Rico," 24 P.R. Laws Ann. § 331a(A)(4),[2] qualifies as "a hospital that has a hospital emergency department" under EMTALA, 42 U.S.C. § 1995dd(a).[3]  It is undisputed that the Corazal CDT is an

---

[2]The full definition of a CDT is "an independent facility or one operated in conjunction with a hospital which provides community services for the diagnosis and treatment of ambulatory patients under the professional supervision of persons licensed to practice medicine, surgery or dentistry in Puerto Rico."  24 P.R. Laws Ann. § 331a(A)(4).  There is no dispute over the fact that the Corozal facility is not operated in conjunction with a hospital.

[3]In relevant part, EMTALA provides:

> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

42 U.S.C. § 1395dd(a).  The enforcement provision is limited to "participating hospital[s]."  Id. § 1395dd(d)(2)(A).  A "participating hospital" is in turn defined as "a hospital that has entered into a [Medicare] provider agreement under section 1395cc

independent facility and is not attached to a hospital.  CDTs are "unique" to Puerto Rico and are "limited health facilities that offer only outpatient services such as dentistry, X-ray, and laboratory services."

It is clear that EMTALA does not apply to all health care facilities; it applies only to participating hospitals with emergency departments.[4]  Further, the screening requirement under

---

of this title."  Id. § 1395dd(e)(2).  The plaintiffs' reliance on this definition to establish that the CDT is a hospital is misplaced.  The existence of a Medicare provider agreement is relevant to whether a facility is "participating" for EMTALA purposes, not to whether a facility is a hospital.  Revisions to section 1395cc, which defines the Medicare provider agreements, are not relevant to the issues in this case.

[4]The plaintiffs attempted at oral argument to bolster their argument by pointing to amendments to an EMTALA regulation, 42 C.F.R. § 489.24.  The regulation was amended after the filing of this suit and the issuance of the district court's order.  See 68 Fed. Reg. 53222, 53262 (Sept. 9, 2003).  It now includes a definition for "dedicated emergency department":

> Dedicated emergency department means any department or facility of the hospital, regardless of whether it is located on or off the main hospital campus, that meets at least one of the following requirements:
>
>   (1) It is licensed by the State in which it is located under applicable State law as an emergency room or emergency department;
>
>   (2) It is held out to the public (by name, posted signs, advertising, or other means) as a place that provides care for emergency medical conditions on an urgent basis without requiring a previously scheduled appointment; or
>
>   (3)  During the calendar year immediately

EMTALA only applies to patients seeking treatment at the emergency room, not elsewhere in a hospital. See Lopez-Soto v. Hawayek, 175 F.3d 170, 173 (1st Cir. 1999); Baber v. Hosp. Corp. of Am., 977 F.2d 872, 884 (4th Cir. 1992). It follows that if the Corozal CDT is not a "hospital," EMTALA cannot apply to it.

As an amendment to the Social Security Act, EMTALA incorporates the Act's definition of a "hospital." See Jackson v. East Bay Hosp., 246 F.3d 1248, 1260 (9th Cir. 2001); cf. Correa, 69 F.3d at 1196 (looking to the Social Security Act's definition of "state law" as the term is used in EMTALA). That definition of "hospital" set forth in 42 U.S.C. § 1395x includes, in relevant part:

> (e) Hospital. The term "hospital" . . . means an institution which –
> (1)    is primarily engaged in providing, by or under the supervision of physicians, to inpatients (A) diagnostic services

---

preceding the calendar year in which a determination under this section is being made, based on a representative sample of patient visits that occurred during that calendar year, it provides at least one-third of all of its outpatient visits for the treatment of emergency medical conditions on an urgent basis without requiring a previously scheduled appointment.

42 C.F.R. § 489.24(b). The plaintiffs argue that this definition means that the emergency room need not be a part of the hospital, but can be "off campus." The amended regulation is irrelevant to the issue, and in any case this argument misconstrues the regulation. The "dedicated emergency department" may be physically located off campus from the main hospital building, but it still must be a part of a hospital.

-8-

and therapeutic services for medical diagnosis, treatment, and care of injured, disabled, or sick persons, or (B) rehabilitation services for the rehabilitation of injured, disabled, or sick persons;

. . .

(7) [and,] in the case of an institution in any State in which State or applicable local law provides for the licensing of hospitals, (A) is licensed pursuant to such law or (B) is approved, by the agency of such State or locality responsible for licensing hospitals, as meeting the standards established for such licensing . . . .

42 U.S.C. § 1395x(e). The Corozal CDT plainly does not meet these requirements, for at least two reasons. First, it is not primarily engaged in providing diagnostic and therapeutic or rehabilitation services to inpatients, as required by subsection (e)(1). The CDT is engaged entirely in outpatient, ambulatory care.

Second, even if the requirement of subsection (e)(1) were met, the other requirements of subsection (e)(7) must be met as well. Puerto Rico law does not license or characterize CDTs as hospitals. Indeed, Puerto Rico law clearly distinguishes between hospitals and diagnostic and treatment centers. Compare 24 P.R. Laws Ann. § 331a(A)(1) (defining a "hospital" as "an institution which renders services to the community providing medical and/or surgical diagnosis and/or treatment for illnesses or injuries and/or obstetric treatment to hospitalized patients . . ." (emphasis added)), with 24 P.R. Laws. Ann. § 331a(A)(4) (defining a CDT as "an independent facility or one operated in conjunction

-9-

with a hospital which provides community services for the diagnosis and treatment of <u>ambulatory patients</u> under the professional supervision of persons licensed to practice medicine, surgery or dentistry in Puerto Rico" (emphasis added)).  Even if a CDT provides emergency services, that does not make it an emergency room of a participating <u>hospital</u>.

The district court recognized that "under normal circumstances, the Court would agree that a clinic, which is really what a CDT is more akin to, does not fall under the auspices of EMTALA."  As a result, the district court found:

> [T]his case hinges not on the literal wording of the statute, but rather on the end result -- that the services provided by Defendant are the types of services that this law is clearly geared to cover.  The statute is clear in the <u>nature</u> of the services it pertains to:  it applies to emergency rooms, a facility that has traditionally provided 24-hour services identical to the one in the case at bar.

The district court found it would be "unconscionable" not to extend EMTALA to cover CDTs with 24-hour emergency services because that would have the effect of "excluding the poor population who primarily rely on CDT services from the reaches of this all important law."  So, it concluded, the spirit of EMTALA, if not its letter, was meant to cover the action against the defendants.

The district court erred.  Federal courts are not free to ignore the letter of the law in favor of the "spirit" of a law. "[C]ourts interpret statutes primarily through detailed analysis of

concrete statutory language, not by reference to abstract notions of generalized legislative intent." Lopez-Soto, 175 F.3d at 176. "[C]ourts must presume that a legislature says in a statute what it means and means what it says there." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). There is no legal ambiguity about the language Congress used in EMTALA -- EMTALA requires the emergency room be of a participating hospital. There is no factual issue about whether the defendant is an emergency room of a hospital -- it is not. The fact that the CDT receives Medicare funds does not make it an emergency room of a hospital.

Congress attempted to solve one problem -- to stop the dumping of indigent patients by hospital emergency rooms -- and chose language to effectuate its ends. That type of problem is not presented by the facts of this case. It is up to Congress, if it so wishes, to extend the protection of EMTALA to other situations. It has not chosen to do so.

The denial of summary judgment to the defendants is **<u>reversed</u>** and the federal claims are ordered dismissed with prejudice. There being no basis for federal jurisdiction otherwise, the district court is directed to dismiss the Puerto Rican law claims without prejudice. No costs are awarded.