# United States Court of Appeals
## For the First Circuit

No. 18-1701

JULIO CARRASQUILLO-SERRANO, personally and on behalf of his
minor children; GABRIELA JANIRIS DIAZ OCASIO, [common law wife,]
personally and on behalf of her minor children; N.C.D., a minor;
JAN CARLOS DELGADO, a minor; Y.C.D., a minor,

Plaintiffs, Appellees,

v.

MUNICIPALITY OF CANOVANAS,

Defendant, Appellant,

C.D.T. OF CANOVANAS; S.M. MEDICAL SERVICES, C.S.P.; OSVALDO
AVILES-RIBOT; PUERTO RICO MEDICAL DEFENSE INSURANCE CO.; JOHN
DOE CORPORATION, d/b/a C.D.T. of Canovanas; JOHN DOES 1, 2 AND
3; A, B AND C CORPORATIONS; UNKNOWN INSURANCE COMPANIES A
THROUGH J; JANE DOE; CONJUGAL PARTNERSHIP AVILES-DOE,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Silvia Carreno-Coll, U.S. Magistrate Judge]

Before

Howard, Chief Judge,
Thompson and Kayatta, Circuit Judges.

Edgar Hernández Sánchez, with whom Cancio, Nadal, Rivera &
Díaz, P.S.C. was on brief, for Appellant.
David Efron, with whom Alberto J. Pérez Hernández, Etienne
Totti del Toro, and Law Offices of David Efron, P.C. were on brief,
for Appellees.

March 12, 2021

**HOWARD**, **Chief Judge**.  The Municipality of Canovanas ("Canovanas") appeals from the district court's denial of its Rule 60(b) motion to overturn the default judgment entered for plaintiffs Julio Carrasquillo-Serrano ("Carrasquillo"), his wife Gabriela Janiris Diaz Ocasio, and their minor children NCD, Jan Carlos Delgado, and YCD.  The plaintiffs' claims arose under the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and Puerto Rico law, and the liability of Canovanas was premised on the plaintiffs' allegation that Canovanas "owned, operated and/or managed, in whole or in part," CDT of Canovanas ("CDT"), the emergency medical facility that provided medical services to Carrasquillo.

On appeal, Canovanas argues that the judgment should be set aside for four independent reasons: (1) the plaintiffs' failure to comply with the 90-day notice requirement of the Puerto Rico Autonomous Municipalities Act (the "PRAMA"), P.R. Laws Ann. tit. 21, § 4703, stripped the district court of jurisdiction; (2) the district court never had personal jurisdiction over Canovanas because the plaintiffs executed service on an attorney who worked for Canovanas instead of the municipality's mayor, as required by statute; (3) the judgment exceeded Puerto Rico statutory limits on the liability of municipalities; and (4) the district court lacked subject matter jurisdiction because CDT lies outside the reach of EMTALA.

- 3 -

For the reasons set forth below, we reject each of Canovanas's arguments and affirm the judgment of the district court.

## I.  Background

On two separate occasions on March 16 and 17, 2014, Carrasquillo sought medical attention at CDT for a variety of symptoms, including dizziness, nausea, and difficulty speaking. He was treated during each visit by Dr. Osvaldo Avíles-Ribot, who discharged Carrasquillo with only medication for nausea and an intramuscular antibiotic.  A week later, Carrasquillo, unable to speak, went to a different hospital and was diagnosed with severe neurological injuries.  Allegedly as a result of the failures in diagnosis and treatment by Dr. Avíles and CDT, Carrasquillo is "unable to work and to care for his family, his speech and hearing have been severely impaired, the right side of his body has limited movement, he lacks coordination, suffers from constant headaches, cannot swallow or breathe well, his feet hurt, he must use a cane to walk, cannot write, and suffers from diabetes and high cholesterol."

In March of 2015, Carrasquillo, his spouse, and their three minor children filed a complaint, including a claim under EMTALA and medical malpractice claims under the Civil Code of Puerto Rico.  That complaint named several defendants, including Dr. Avíles, CDT, its owner Canovanas, and S.M. Medical Services,

C.S.P. ("S.M. Medical"), which operated the CDT on behalf of Canovanas. The plaintiffs alleged that: (1) Canovanas "owned, operated and/or managed" CDT; (2) CDT has an emergency room and renders 24-hour emergency medical services; (3) CDT is governed by EMTALA; (4) NCD, Jan Carlos Delgado, and YCD were all minors; and (5) Carrasquillo was permanently disabled as a result of the defendants' negligence.

The complaint was filed on March 11, 2015. Canovanas has maintained before us, and the plaintiffs do not dispute, that the plaintiffs did not provide advance notice of the suit to Canovanas. The plaintiffs served the complaint and summons on March 17, 2015, not on the mayor of Canovanas personally, but on an attorney employed by Canovanas, Josué González. Neither Canovanas nor CDT responded to the complaint or filed any dispositive motions in the district court until after judgment was entered against them. Other defendants, including Dr. Avíles and S.M. Medical, appeared and filed answers to the complaint. Throughout much of the period when this litigation was ongoing, S.M. Medical continued to operate CDT on behalf of Canovanas and was a party to the litigation until S.M. Medical entered bankruptcy proceedings.

On April 27, 2015, the plaintiffs moved for an entry of default against Canovanas and CDT. On May 4, 2015, the clerk of court entered default against Canovanas and CDT. On May 18, 2015,

the plaintiffs asked the court to enter default judgment against Canovanas and CDT. The district court declined, citing concerns about split judgment because other defendants remained in the case. The plaintiffs again sought a default judgment two years later in June 2017, and the district court again declined, this time because a trial on damages had already been scheduled. Neither of the plaintiffs' motions for default judgment included the required statement "that a copy of the motion has been mailed to the last known address of the [defaulting party]," D.P.R. Local R. Civ. P. 55(a), and the plaintiffs have not submitted any other evidence that Canovanas had been notified of its default.

In April 2017, after settlement discussions, the district court had entered judgment against codefendants Dr. Avilés and Puerto Rico Medical Defense Insurance Company. A jury trial on damages with respect to Canovanas and CDT was held on July 18, 2017, and the jury reached a verdict that day. Judgment was entered against Canovanas and CDT on August 30, 2017, in the amounts of $900,000 to Carrasquillo ($500,000 for lost wages and $400,000 for present and future suffering), $300,000 for Gabriela Janiris Díaz Ocasio, and $100,000 to each of the minor plaintiffs, for a total of $1.5 million.

In March 2018, almost three years after González was served with the initial complaint, Canovanas appeared and moved to set aside the verdict and judgment. In its Rule 60(b) motion,

- 6 -

Canovanas attributed the delay in its response to Hurricane Maria, which made landfall on Puerto Rico in September 2017, roughly thirty months after the initial complaint was filed and nearly three weeks after judgment was entered against Canovanas. After the district court denied this motion, Canovanas appealed from that ruling.

## II. Standard of Review

We devote attention to the applicable standards of review for Canovanas's arguments because those standards are central to the outcome of this case. Had they been raised at the proper procedural juncture, one or more of the arguments that Canovanas now advances might have prevented it from being held liable for the $1.5 million judgment. We ordinarily prefer to resolve disputes on their merits. See Keane v. HSBC Bank USA for Ellington Tr., Series 2007-2, 874 F.3d 763, 765 (1st Cir. 2017) ("[T]he law . . . manifests a strong preference that cases be resolved on their merits."). But there are nevertheless consequences for failing to assert rights in a timely manner.

"On motion and just terms, the court may relieve a party" from judgment for a handful of enumerated reasons, including that "the judgment is void," as argued by the appellant here. Fed. R. Civ. P. 60(b)(4). Normally, "[a] motion to set aside a default judgment is within the sound discretion of the trial court." Maine Nat. Bank v. F/V Explorer, 833 F.2d 375, 378 (1st Cir. 1987)

(citing Am. Metal Serv. Exp. Co. v. Ahrens Aircraft, Inc., 666 F.2d 718, 720 (1st Cir. 1981)).  When a motion for relief from judgment comes under Rule 60(b)(4), however, our review is de novo, "because a judgment is either void or it is not."  Shank/Balfour Beatty, a Joint Venture of M.L. Shank, Co., Inc., Balfour Beatty Construction, Inc. v. Int'l Broth. Of Elec. Workers Local 99, 497 F.3d 83, 94 (1st Cir. 2007) (quoting Fafel v. DiPaola, 499 F.3d 403, 409-10 (1st Cir. 2005)).

Though our review is de novo, the Supreme Court has cautioned that "[a] judgment is not void . . . simply because it is or may have been erroneous."  United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270 (2010) (quoting Hoult v. Hoult, 57 F.3d 1, 6 (1st Cir. 1995)).

> There are only two sets of circumstances in which a judgment is void (as opposed to voidable).  The first is when the rendering court lacked either subject matter jurisdiction or jurisdiction over a defendant's person.  The second is when the rendering court's actions so far exceeded a proper exercise of judicial power that a violation of the Due Process Clause results.

Farm Credit Bank v. Ferrera-Goitia, 316 F.3d 62, 67 (1st Cir. 2003) (citing United States v. Boch Oldsmobile, Inc., 909 F.2d 657, 661 (1st Cir. 1990)); see also United Student Aid Funds, 559 U.S. at 271 ("Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional

- 8 -

error or on a violation of due process that deprives a party of notice or the opportunity to be heard.").

Furthermore, the Supreme Court has observed with approval that "[f]ederal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." United Student Aid Funds, 559 U.S. at 271 (quoting Nemaizer v. Baker, 793 F.2d 58, 65 (2d Cir. 1986)). In so holding, the Court cited to one of our cases holding that "total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and . . . only rare instances of a clear usurpation of power will render a judgment void." Id. (alterations and internal quotation marks omitted) (quoting Boch Oldsmobile, 909 F.2d at 661-62).

Our review is thus non-deferential but narrow; we focus solely on whether there was "a clear usurpation of power" in the district court's exercise of jurisdiction or the alleged violation of due process. Id. (quoting Boch Oldsmobile, 909 F.2d at 662).

Finally, we also note that Canovanas did not raise any argument about the limits of EMTALA in the district court. We conclude that, even applying de novo review, there was no clear usurpation of power in the district court's exercise of jurisdiction over the plaintiffs' EMTALA claims. Accordingly,

this Rule 60(b)(4) argument would fail even if it had been preserved.

### III. Canovanas's Claims

Canovanas advances four arguments in support of its contention that the district court erred in refusing to grant its motion to set aside the judgment against it as void under Federal Rule of Civil Procedure 60(b)(4): (1) the plaintiffs failed to comply with the notice deadline of the PRAMA and thus the district court never obtained jurisdiction over Canovanas; (2) the plaintiffs served notice on counsel for Canovanas instead of the mayor and thus the district court never obtained personal jurisdiction over Canovanas; (3) the judgment exceeds Puerto Rico law limitations on the liability of municipalities; and (4) the district court lacked federal question subject matter jurisdiction because CDT is not covered by EMTALA. Because none of the arguments identifies a clear usurpation of power, each argument fails.

### A. The PRAMA Service Requirement Is Not Jurisdictional.

The PRAMA requires that individuals who plan to sue a Puerto Rico municipality for damages notify the mayor of the municipality within ninety days of learning of the damages giving rise to the claim. P.R. Laws Ann. tit. 21, § 4703. Canovanas contends that the requirement is jurisdictional and, because the plaintiffs did not comply with it, the district court never

obtained jurisdiction over Canovanas. We conclude, however, that the PRAMA's notice requirement is not jurisdictional, and so we need not address whether the plaintiffs satisfied the statute.

The PRAMA is part of a chapter of Puerto Rico's code titled, "Jurisdiction of the Courts," and the statute itself states that it is a "Jurisdictional Requirement. No legal action of any kind shall be initiated against a municipality for damages due to negligence unless written notification is made in the form, manner and terms provided in this subtitle." Id. § 4703(b). The requirement "is 'a condition precedent of strict compliance in order to be able to sue [a] municipality.'" Rodriguez-Robledo v. P.R. Elec. Power Auth., 90 F. Supp. 2d 175, 178 (D.P.R. 2000) (quoting Mangual v. Superior Court, 88 P.R.R. 475, 483 (1963)). At first glance, this would seem to settle the matter in Canovanas's favor.

But, as a federal court construing the requirements of Puerto Rico law, "we must apply the state's law on substantive issues and 'we are bound by the teachings of the state's highest court.'" Phoung Luc v. Wyndham Mgmt. Corp., 496 F.3d 85, 88 (1st Cir. 2007) (quoting N. Am. Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 37-38 (1st Cir. 2001)). Because "[i]n regard to law-determination, Puerto Rico is the functional equivalent of a state[,] . . . an on-point decision of the Puerto Rico Supreme

- 11 -

Court normally will control." Gonzalez Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009) (citation omitted).

The Puerto Rico Supreme Court has chipped away at the PRAMA notice requirement and its predecessors in three ways that cause us to conclude that the requirement is not jurisdictional. First, the court has consistently treated the notice requirement as an affirmative defense that can be waived. See Mintatos v. Municip. of San Juan, 322 F. Supp. 2d 143, 146 (D.P.R. 2004) (observing that the Puerto Rico Supreme Court has called the notice requirement an "unprivileged defense" and held that the requirement can be waived) (citing Ins. Co. of P.R. v. Ruiz Morales, 96 D.P.R. 164, 176, 1968 WL 17227 (P.R. 1968)). Indeed, counsel for Canovanas agreed at oral argument that the notice requirement is an affirmative defense. Affirmative defenses are generally waivable if not asserted at the proper juncture and rarely, if ever, limit the court's jurisdiction. Compare Fed. R. Civ. P. 12(h)(1) (enumerating ways in which certain affirmative defenses can be waived), with Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Second, the Puerto Rico Supreme Court has discerned a wide variety of exceptions that might not be immediately apparent from the text of the statute, holding that:

> [T]he notice requirement is not jurisdictional in the sense that it admits of certain exceptions. For example, the provision is not applicable to the municipality's insurance company. In addition, it does not apply to actions against a municipality arising out of a contractual relationship, or to cases where the municipality is the plaintiff and the defendant files a counterclaim against it, or cases where the plaintiff is seeking just compensation in a civil expropriation case.

Rodriguez-Robledo, 90 F. Supp. 2d at 178 (collecting cases) (citations omitted). The Puerto Rico Supreme Court characterized its own approach as "liberal . . . in the application of the notice requirement [with a] tendency to strictly construe those provisions that limit a person's right to seek redress." Passalacqua v. Mun. de San Juan, 116 D.P.R. 618, 16 P.R. Offic. Trans. 756, 768 (P.R. 1985) (interpreting a predecessor to the current municipality notice requirement).

Third, and critically, in recounting the evolution of its interpretations of the PRAMA, the Puerto Rico Supreme Court quoted from its prior ruling that a predecessor to the current notice requirement, "although it is of strict compliance . . . is not a strictly jurisdictional requirement." Id. at 767 (emphasis added) (quoting Ruiz Morales, 96 D.P.R. at 174). In Passalacqua, the Puerto Rico Supreme Court also cited one of its earlier decisions, which had concluded that:

> where the risk of the objective evidence's disappearance is minimal, where there is effective proof of the identity of the

- 13 -

> witnesses, and where the State may easily investigate and corroborate the facts alleged in the complaint filed -- the prior notice requirement is not strictly applicable inasmuch as the objective sought by the application thereof has no raison d'être.

16 P.R. Offic. Trans. at 769 (alterations omitted) (quoting Meléndez Gutiérrez v. E.L.A., 113 D.P.R. 811, 815 (P.R. 1983)). The Passalacqua court went on to hold that the filing of the complaint and service of the summons within the statutory period sufficed to satisfy the notice requirements. Id.

Because the Puerto Rico Supreme Court has treated the PRAMA notice requirement as an affirmative defense, has read exceptions into it, and has specifically held that a predecessor notice statute was not jurisdictional, we conclude that the requirement is not jurisdictional. Therefore, regardless of whether the plaintiffs satisfied the requirement, the judgment is not void for lack of jurisdiction.

**B.   Service of Process Was Sufficient.**

Canovanas argues next that the district court lacked personal jurisdiction over it because it was never properly served. Under Federal Rule of Civil Procedure 4(j)(2), service of process may be made on a municipality by "(A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such defendant."  The

Federal Rules thereby incorporate the Puerto Rico Rules, which provide for service "[u]pon a municipal corporation or agency thereof with standing to sue and be sued, by delivering a copy of the summons and of the complaint to the chief executive officer thereof or to a person designated by him." P.R. Laws Ann. tit. 32a, § 4.4(h) (emphasis added). We ask, then, whether González was "a person designated by" the mayor to accept service. Id.

We have held that "[a] return of service generally serves as *prima facie* evidence that service was validly performed." Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008). That presumption of proper service is not insurmountable: in Blair, the presumption was overcome by a simple affidavit stating that the parties who received service were not authorized to accept service. Id. at 111-12.

Here, the plaintiffs filed a return of service with the court, executed by process server and declaring under penalty of perjury that the complaint and summons were served upon González, "who is designated by law to accept service on behalf of" Canovanas. That return of service thereby creates the rebuttable presumption "that service was validly performed." Id. at 111.

Canovanas has failed to overcome that presumption. Canovanas admits that González "was an in-house counsel employed by" Canovanas, claiming only that González was not the mayor, and, "[r]esultantly, the Municipality of Canóvanas was not properly

- 15 -

served."  Although Canovanas has apparently been unable to locate González after being confronted with the judgment, Canovanas does not dispute that González was served, and the burden at this point is on Canovanas, not the plaintiffs.  Canovanas has not presented an affidavit that González was not authorized to accept service, any other evidence that might rebut the presumption of proper service, any argument that the presumption should not apply under these circumstances, or any other reason why the presumption should be rebutted.

Without any evidence about González's status or argument from Canovanas about the inapplicability of the presumption, we conclude that the district court did not undertake "a clear usurpation of power" by applying the rebuttable presumption of proper service and exercising jurisdiction over Canovanas.  United Student Aid Funds, 559 U.S. at 271.

## C.    A Statutory Limitation of Liability Is an Affirmative Defense.

Canovanas has also argued that the $1.5 million judgment against it is void because Canovanas, as a municipality, is entitled to a limitation of its liability under Puerto Rico law. P.R. Laws Ann. tit. 21, § 4704 provides:

> Claims against municipalities for personal or property damages caused by the fault or negligence of the municipality, shall not exceed the amount of seventy-five thousand dollars ($75,000).  When damages are claimed by more than one person in a single cause of

action or omission, or when a single claimant, is entitled to several causes of action the compensation shall not exceed the sum of one hundred and fifty thousand dollars ($150,000). If the court finds the damages to each of the persons exceed one hundred and fifty thousand dollars ($150,000), the court shall proceed to distribute or prorate said amount among the plaintiffs, on the basis of the damages suffered by each of them.

While a judgment ten times the statutory limit certainly raises eyebrows, to serve as a basis to set aside a judgment under Rule 60(b)(4), the excessive judgment must either be "a clear usurpation of power" in the court's exercise of jurisdiction or "a violation of due process that deprives a party of notice or the opportunity to be heard." United Student Aid Funds, 559 U.S. at 271. It is neither.

We have seen this issue before. We previously reviewed a case in which a defendant failed to assert a statutory limitation-of-liability defense, but the district court nonetheless found that the Massachusetts statute limited the plaintiff's potential recovery. See Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1225-26 (1st Cir. 1994). We reversed the district court, holding that "a statutory provision limiting damages to a fixed sum constituted an affirmative defense for purposes of [Federal Rule of Civil Procedure] 8(c)," and that affirmative defenses not included in an appropriate responsive pleading are waived. Id. at 1226. We went on to explain that

- 17 -

"[t]he reason why affirmative defenses under Rule 8(c) must be pled in the answer is to give the opposing party notice of the defense and a chance to develop evidence and offer arguments to controvert the defense."  Id.

The defense that Canovanas raises is a statutory limitation on liability, and, like the defendant in Knapp Shoes, Canovanas has waived the defense by failing to include it in a responsive pleading.  Id. at 1225-26.

Moreover, any potential due process concerns may be undercut by the ability of Canovanas to assert the statutory liability limitations in a different venue.  As the plaintiffs and the district court both point out, Puerto Rico provides for a right of contribution action between joint tortfeasors.  The Puerto Rico Supreme Court has observed that:

> In Puerto Rico, the right of contribution between joint tortfeasors has been acknowledged since [1951].  The well-known rule that applies when the damage is caused by two or more persons provides that all joint tortfeasors are liable to the plaintiff for the damage sustained by the latter.  However, there is among these joint tortfeasors a right of contribution derived from [P.R. Laws Ann. tit. 31, § 3109], which allows one of the codebtors who has paid more than his or her share to claim from the other codebtors their respective shares.

Szendrey v. Hospicare, Inc., 158 D.P.R. 648, 2003 WL 751582 (P.R. 2003) (English translation lacks pincites).  Canovanas mounts no argument that the district court erred in observing that Canovanas

- 18 -

will be able to assert the statutory limit on liability in a subsequent contribution action against its codefendants,[1] or that forcing it to do so "deprives [it] of notice or the opportunity to be heard." United Student Aid Funds, 559 U.S. at 271.

The statutory limit on municipal liability does not render the judgment void.[2]

---

[1] Because Canovanas has thus waived any argument on the matter, we therefore have no occasion to decide whether the district court was correct on this point.

[2] As a last-ditch effort on this point, Canovanas also attempts to take advantage of P.R. Laws Ann. tit. 26, § 4105, which provides immunity from suit to health professionals. Canovanas argues that, since the statute references municipalities, it should also be read to grant municipalities immunity from suit. The plain language of the statute belies this argument, providing:

> No health professional (employee or contractor) may be included as a defendant in a civil action in a claim for damages for guilt or negligence for professional malpractice ("malpractice") caused in the performance of his profession, while said professional acts in compliance with his duties and functions, including teaching, as employee of the Commonwealth of Puerto Rico, its dependencies, instrumentalities, the comprehensive Cancer Center of the University of Puerto Rico and the municipalities.

P.R. Laws Ann. tit. 26, § 4105. The statute unambiguously references immunity for the employees of the municipalities, not the municipalities themselves. The cases that Canovanas cites similarly address immunity for employees, and not for the municipalities themselves. See Frances-Colon v. Ramires, 107 F.3d 62, 64 (1st Cir. 1997) (finding doctor employees immune from suit); Oquendo-Lorenzo v. Hospital San Antonio, Inc., 256 F. Supp. 3d 103, 117 (D.P.R. 2019) (examining immunity for health care professionals and doctors, not municipalities). Section 4105 does not grant immunity to municipalities.

**D.    The District Court Had Jurisdiction to Determine the Merits of Plaintiffs' EMTALA Claims.**

Finally, the district court did not lack federal question jurisdiction to hear this suit.  District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  To determine whether the exercise of federal question jurisdiction is proper, we apply the familiar "well-pleaded complaint rule, which 'requires the federal question to be stated on the face of the plaintiff's well-pleaded complaint.'"  López-Muñoz v. Triple-S Salud, Inc., 754 F.3d 1, 4 (1st Cir. 2014) (quoting R.I. Fishermen's All., Inc. v. R.I. Dep't of Envtl. Mgmt., 585 F.3d 42, 48 (1st Cir. 2009)).  Where the district court has federal question jurisdiction over claims "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, the district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

Here, the parties agree that (1) the complaint stated certain EMTALA claims, and (2) if the district court properly exercised jurisdiction over EMTALA claims, then its exercise of

jurisdiction over the plaintiffs' remaining claims was proper under § 1367(a).

Canovanas argues that EMTALA does not apply to CDT, and thus the plaintiffs' ostensible claims under EMTALA are not under EMTALA at all. Therefore, Canovanas argues that the district court lacks federal question jurisdiction under § 1331. In support of this proposition, Canovanas points us to Rodriguez v. Am. Intern. Ins. Co. of P.R., 402 F.3d 45 (1st Cir. 2005). There we found that EMTALA did not apply to a different CDT, the Corozal CDT.[3] In Rodriguez, we held that EMTALA did not apply to the Corozal CDT because (1) the Corozal CDT treats outpatients instead of inpatients, and (2) Puerto Rico law has different regulations for hospitals than for CDTs. Id. at 48-49. Canovanas points out, correctly, that the Canovanas CDT also treats outpatients instead of inpatients and is also regulated as a CDT instead of as a hospital.[4]

_____

[3] In this Section, we refer to CDT of Canovanas as "the Canovanas CDT" and the CDT at issue in Rodriguez as "the Corozal CDT."

[4] On the merits of the EMTALA issue, the plaintiffs make two arguments that the EMTALA claims here are distinguishable from the ones at issue in Rodriguez, and that we should therefore read EMTALA to apply to the Canovanas CDT. First, while in Rodriguez we relied on the fact that the Corozal CDT had no relationship with an EMTALA participating hospital, here the Canovanas CDT does have a working relationship with an EMTALA participating hospital: the hospital of the University of Puerto Rico. See 402 F.3d at 47 ("It is undisputed that the Corozal CDT is an independent facility and is not attached to a hospital."). Second, the regulations issued under EMTALA have been amended since Rodriguez to change

- 21 -

But Rodriguez, instead of illustrating why the district court here did not have jurisdiction over the plaintiffs' claims, illustrates why it did: we did not simply dismiss the case for lack of subject matter jurisdiction. Instead, we first resolved the question, "arising under the . . . laws . . . of the United States," 28 U.S.C. § 1331, of whether EMTALA applied to the CDT at issue. Rodriguez, 402 F.3d at 46-49. If Canovanas, like the defendants in Rodriguez, had asserted in a motion that the Canovanas CDT here is effectively the same as the Corozal CDT, and that therefore the EMTALA claims should be dismissed, the district court would have had subject matter jurisdiction to adjudicate that motion. See, e.g., id. That subject matter jurisdiction did not disappear because Canovanas neglected to appear and seek to dismiss the claim against it. Canovanas did not point to any case where any court found that the federal cause of action included in a well-pleaded complaint was so insubstantial as to rob the district court of jurisdiction to adjudicate that federal claim.

the definition of "dedicated emergency department," and the plaintiffs claim that the amended definition encompasses the CDT at issue here. See 42 C.F.R. § 489.24. Best read, the plaintiffs' argument is not that the Canovanas CDT is itself a hospital participating in EMTALA, but that the Canovanas CDT functions as a dedicated emergency department of the EMTALA participating hospital of the University of Puerto Rico. We take no view of the merits of these arguments, but the district court would have had subject matter jurisdiction to adjudicate them.

Moreover, even "[t]he termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction, but, rather, sets the stage for an exercise of the court's informed discretion."  Senra v. Town of Smithfield, 715 F.3d 34, 41 (1st Cir. 2013) (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996)).  In Senra, we upheld the district court's exercise of supplemental jurisdiction to determine a plaintiff's Rhode Island state law claims relating to the termination of his employment even after it had dismissed his federal due process clause claims arising out of the same termination.  Id.  Similarly, here, it is not immediately obvious that, if the EMTALA claims were dismissed, the district court could not have nonetheless exercised jurisdiction over the plaintiffs' state law claims.

The possibility that Canovanas would have succeeded on a motion to dismiss the EMTALA claims does not mean the district court lacked federal question subject matter jurisdiction.

## IV.  Conclusion

The judgment of the district court is **affirmed**.